[Civ. No. 55707. Second Dist., Div. Three. Jan. 22, 1980.]

HERVE L. ALFRED, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Patrick L. Johnston for Plaintiff and Appellant.

John H. Larson, County Counsel, and Halvor S. Melom, Deputy County Counsel, for Defendant and Respondent.

OPINION

**POTTER, Acting P. J.**—This is an appeal by plaintiff, a civil service employee of defendant county, from a judgment dismissing his complaint after demurrer was sustained without leave to amend. By failing to present any argument in support of a different result with respect to his second through seventh causes of action (based upon alleged violation of the prevailing wage provisions of the charter for the County of

Los Angeles) plaintiff has narrowed the issues in this appeal[1] to the question whether the first cause of action states a cause of action on the theory of inverse condemnation.

The facts alleged in the first cause of action, admitted by the demurrer (*White v. Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222]), include the following: For a period in excess of seven years, plaintiff was employed by defendant as a civil servant in various classified positions (L.A. County Charter, art. XI, § 33). The classification of the positions held by plaintiff were, respectively: day care teacher's aide from September 15, 1971 to August 24, 1972; eligibility worker in the department of public social services from August 24, 1972, to date of filing of the complaint, February 24, 1978. Throughout such employment, plaintiff received the salary incidental to the classified positions held by him. However, from the inception of his employment plaintiff was ordered "to perform for the Department of Public Social Services...the duties normally performed by a Program Analyst, all without receiving the salary incidental to such position...." Plaintiff competently performed all the duties assigned to him in a professionally accepted and approved manner. When he brought these facts to the attention of managerial level employees of the county, he was informed "that no county employee could be paid the salary of a position without acceding to that position via civil service examination despite his performing the duties of such position on a day to day basis," and "that no civil service examinations for the position at which Plaintiff was working, i.e. Program Analyst, were scheduled inasmuch as no such positions were open and available."

Based on these facts, plaintiff alleged: "Plaintiff['s] services, abilities, talents, knowledge, education, experience and judgment, were taken and were utilized by the County of Los Angeles all without being compensated for at the fair market value, which standard of value was and is set by the defendant County of Los Angeles, all to the general damage of Plaintiff [in] a sum within the jurisdictional limit of the above entitled court."

In support of the demurrer, the county provided the court with copies (to be judicially noticed) of article IX of the charter and of a memorandum of understanding between the county's authorized management

---

[1]We deem the appeal abandoned insofar as it relates to these causes of action. (*Evans v. Galardi* (1979) 93 Cal.App.3d 291, 293 [155 Cal.Rptr. 505].)

representatives and the Joint Council of Los Angeles County Employees Association, adopted by the Los Angeles County Board of Supervisors in 1977,[2] pursuant to the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.).

In its supporting memorandum in the trial court and its respondent's brief on appeal, the county has demonstrated that the facts alleged clearly establish that plaintiff has received all the compensation he lawfully can receive under the applicable civil service provisions of the county charter and rules issued thereunder. These enactments required that appointments to classified positions be made only from eligible lists of applicants who had passed the necessary examinations with scores ranking them among the three highest on the list. Never having been certified for appointment from such a list to the position of program analyst, plaintiff could not qualify for appointment to that position. Plaintiff's rights were therefore governed by the rule that a "public employee is entitled only to such compensation as is expressly provided by statute or ordinance regardless of the extent of services actually rendered." (*Markman* v. *County of Los Angeles* (1973) 35 Cal.App.3d 132, 135 [110 Cal.Rptr. 610].) Particularly applicable is the following rule: "[W]here the charter or the statute prescribes the method by which appointments or assignments to particular positions provided for under municipal government shall be made, it is an essential condition to a recovery of the salary annexed to such positions that the prescribed method of appointment or assignment be followed; and where it is not followed no action on *quantum meruit* will lie against the municipality upon the theory that the party seeking to recover said salary acted in the capacity and performed the services of such position. (See, also, *Murtagh* v. *City of New York*, 106 App.Div. 98 [94 N.Y. Supp. 308]; 1 Dillon on Municipal Corporations, 5th ed., p. 426, citing cases.) The rule is grounded mainly upon the proposition that the right to receive the salary is an incident which attaches itself to the legal title to the office and not to its occupation and exercise. (*Dorsey* v. *Smith,* 28 Cal. 21; *Ward* v. *Marshall*, 96 Cal. 155 [31 Am.St.Rep. 198, 30 Pac. 113].) In *Shaw* v. *City and County of San Francisco, supra*, [13 Cal.App. 547 (110 P. 149)] it was said that to permit a liability to be imposed upon a

---

[2]By appendix to its respondent's brief, the county has supplied this court with excerpts from earlier versions adopted by the board of supervisors, showing the provisions dealing with out-of-class assignments. These versions have acquired the force of law (see *City & County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 927 [120 Cal.Rptr. 707, 534 P.2d 403]) and are therefore judicially noticeable (Evid. Code, § 452, subd. (b)).

municipality to pay for services rendered under appointments made contrary to the explicit provisions of the law 'would be to fritter away the entire scheme for civil service appointments contained in the charter'; and it was further stated that those seeking to recover the salaries 'were bound to see that their appointments were made according to the requirements of the charter.'" (*Nash* v. *City of Los Angeles* (1926) 78 Cal.App. 516, 519-520 [248 P. 689].)

Plaintiff makes no attempt to question the above authorities. Rather, he asserts that they "are inapplicable and irrelevant."

The county's brief also demonstrates that the facts alleged fail to show any right on plaintiff's part to further compensation pursuant to the provisions of the memoranda of understanding with the County Employees Association. Though this agreement expresses the intent to avoid "whenever possible, working an employee on an out-of-class assignment for a prolonged period of time," it only obligates the county to initiate, upon request, action either to "appoint the employee to the higher class if eligible . . . or to terminate the assignment," and failure to do so is a basis for an employee grievance. Moreover, the agreement further provides that "[a]n employee working on an out-of-class assignment will continue to receive the rate of pay for his regular classification until such time as he has been appointed to the higher rated classification in accordance with the rules of the Civil Service Commission." Failure to pursue any step of grievance procedure constitutes a settlement of the grievance.

Plaintiff also fails to meet defendant's argument based upon the memoranda of understanding. Apparently this likewise is deemed "irrelevant" by plaintiff.

■ Plaintiff thus narrows the issue to the question whether a public employee, who has voluntarily continued his employment under conditions such that the compensation to which he is entitled under applicable law is less than the reasonable value of his services, suffers a "tak[ing]" of his "property" without "just compensation" within the meaning of California Constitution, article I, section 19. Of course, if there were such taking, the conflicting provisions of the applicable statutory law would be superseded by the constitutional requirement. (*McMillan* v. *Siemon* (1940) 36 Cal.App.2d 721, 725 [98 P.2d 790].) The difficulty with plaintiff's argument, however, is that it simply begs

the question by assuming that there can be a taking of plaintiff's services and thereby a taking of his property[3] when, by virtue of the terms of his employment as determined by statutory provisions, he has been fully compensated for them. By continuing his employment pursuant to those terms, plaintiff has furnished his services in return for the stipulated compensation, and nothing has been taken from him in any sense.

Such effect was given to statutory provisions relating to public employment by the Court of Civil Appeals of Texas in *Devon* v. *City of San Antonio* (1969) 443 S.W.2d 598. A city employee contended that, by withholding pension contributions from his wages which were not refunded when he left city employment (without becoming eligible for retirement benefits), the city had taken his property for public use without adequate compensation. The statutes governing such employment clearly denied such refund, and the employee contended that they thereby violated the constitutional requirement. In rejecting this contention, the court said (*id.*, at p. 600): "These statutory provisions pertaining to appellant's employment with the city were necessarily a part of his contract of employment and are read into his contract as fully as though they had been actually incorporated in it...[¶] The deductions from appellant's wages for the pension fund were with his consent and in compliance with, rather than in breach of, the terms of his contract with the city."

The same logic was applied by the Supreme Court of New Jersey in *Allen* v. *Board of Education* (1911) 81 N.J.L. 135 [79 A. 101]. A teacher's salary deductions for a pension fund were challenged. The court said (*id.*, at pp. 102-103): "Constitutional objections to the act, however, are urged on the part of the plaintiff: First, it is said it violates the first section of the Bill of Rights and deprives persons of property without due process of law. The argument is that this procedure established by the act constitutes a taking of property of one person and giving it to another, or if the use be considered a public use, then there is a taking of private property without just compensation. This argument loses sight of the fact that, by the terms of the agreement of employment embodying the statutory terms, the salary to be paid was a net amount, and not a gross amount, and thus there was in fact no taking."

[3]We find it unnecessary to decide whether such services are "[p]rivate property" within the meaning of California Constitution, article I, section 19. We will simply assume for purposes of argument that personal services do so qualify.

More recently, the Superior Court of New Jersey explained the holding of *Allen* in *Frazier* v. *Liberty Mut. Ins. Co.* (1977) 150 N.J. Super. 123 [374 A.2d 1259, 1264] as follows: "The court held that the creation of the fund was an important public measure and tended to make the position of teacher a more desirable one, thereby contributing to a more effective educational system. There was, therefore, a strong public and social purpose for the legislation. Persons desiring to become teachers were free to accept or refuse such positions. If they accepted a teaching position, the act was binding upon them. Since the statute formed a part of the contract, the net amount was known, and there was no taking of property in the constitutional sense."

We are persuaded by the logic of the above authorities and find them dispositive of this appeal. The civil service provisions of the Los Angeles County Charter likewise constitute an important public measure tending to make the public employment more desirable and county services more effective. Plaintiff was free to accept or refuse the position offered under the terms of the offer and not otherwise. He thus voluntarily rendered services and has received the agreed compensation. Consequently, nothing has been taken from him.

Our decision is analogous to the decision of the United States Supreme Court in *Hurtado* v. *United States* (1973) 410 U.S. 578 [35 L.Ed.2d 508, 93 S.Ct. 1157], where the court turned down a claim that the incarceration of material witnesses with payment only of a nominal allowance was the taking of their property. The Supreme Court said (*id.*, at p. 588 [35 L.Ed.2d at p. 518]): "But the Fifth Amendment does not require that the Government pay for the performance of a public duty it is already owed."

A like basis for denial of a similar claim in behalf of an attorney ordered by a court to defend an indigent defendant and compensated at less than the reasonable value of his services was adopted by the Ninth Circuit in *United States* v. *Dillon* (9th Cir. 1965) 346 F.2d 633, 635, where the court said: "An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a 'taking of his services.' Cf. *Kunhardt &*

*Company, Inc.* v. *United States*, 266 U.S. 537, 45 S.Ct. 158, 69 L.Ed. 428 (1925)."

Plaintiff in the case at bench has equally obligated himself to perform his services for the compensation made applicable by law so long as he continued his employment. The principle stated in *Hurtado* and *Dillon*, therefore, likewise requires the conclusion that there has been no taking of his services.

The judgment is affirmed.

Cobey, J., and Allport, J., concurred.

A petition for a rehearing was denied February 8, 1980, and appellant's petition for a hearing by the Supreme Court was denied March 20, 1980.