## KUNHARDT & COMPANY, INC. *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 141. Argued December 10, 1924.—Decided January 5, 1925.

1. In order to comply with the demand of government officials that it deliver goods at a port in this country, as required to do by its contracts of sale with the United States, claimant was obliged to forego a profitable disposition of a vessel it owned and prepared her for the transportation, before the contracts were canceled. *Held,* that there was no taking of the vessel under eminent domain, and that the United States was not liable for the depreciation of her sale value. P. 540.

2. There can be no recovery on an agreement of the United States to pay the amount by which the cost of equipment provided for performance of a war contract exceeds its value at termination of the contract, as determined by appraisers, where cost and appraisal are not alleged and depreciation is not shown. *Id.*

3. A contract adjusting a claim under canceled war contracts, which by its terms was not binding until approved by a board of contract review, was of no force without such approval. P. 541.

58 Ct. Clms. 718, affirmed.

APPEAL from a judgment of the Court of Claims dismissing a petition on demurrer.

*Mr. Raymond H. Hudson* for appellant.

*Mr. Assistant Attorney General Donovan* appeared for the United States. *The Solicitor General, Mr. Assistant Attorney General Lovett* and *Mr. Lisle A. Smith,* Special Assistant to the Attorney General, were on the brief.

19458°—25——38

MR. JUSTICE SANFORD delivered the opinion of the Court.

This is an appeal from a judgment dismissing, on demurrer, a petition filed by Kunhardt & Co., Inc., against the United States. 58 Ct. Clms. 718.

The material facts alleged in the petition and shown by the accompanying exhibits, are these: The claimant is a New York corporation, engaged in importing. On September 10, 1918, the Director of Aircraft Production issued to it a purchase order for the growth of 50,000 to 75,000 bushels of castor beans, to be delivered by the claimant, at a specified price, at Puerto Cortez, Honduras, or, at the option of the Government, at a specified higher price, at any United States port on the Gulf of Mexico. On September 16 this order was incorporated in a contract between the United States and the claimant. In October the government officers insisted that as they were having difficulty in finding transportation and the claimant had a schooner, the *Herbert May*, it should provide transportation for the beans from Honduras and Guatemala to New Orleans—as it could be required to do under the option reserved respecting the place of delivery. The claimant, having no use for the schooner, was then negotiating its sale and had received an offer of $75,000. But as this was the only means of transportation available to it, the claimant, it is alleged, was " forced " to retain possession of the schooner, and had it prepared for the trip to the West Indies. On November 6 the Director of Aircraft Production issued to the claimant a second purchase order for 75,000 to 100,000 bushels of castor beans, to be grown or purchased in Honduras or Guatemala and delivered at New Orleans, at a specified price. This order was incorporated in a second contract between the United States and the claimant, dated November 12, although executed later. This contract contained a provision that if the Di-

rector of Aircraft Production should terminate it prior to completion, the United States should, among other things, pay the claimant " on account of depreciation or amortization of plant, facilities, and equipment " provided by the claimant for the performance of the contract, the amount by which their cost to the claimant should exceed their fair market value at the time of such termination, as determined by three appraisers.   On November 14 the Director of Aircraft Production suspended the second contract, and a few days later cancelled both contracts.   The claimant, then having no use for the schooner, sold it for $40,000, the highest price obtainable, thus, it is alleged, suffering " a loss from depreciation in the value of the schooner of $35,000."   Negotiations were subsequently had for settlement of the losses caused to the claimant by the cancellation of the contracts.   In January, 1919, the contracting officer and the claimant executed a contract providing that its claim should be settled for $35,000, including $10,521.22 for depreciation loss on the schooner. This contract provided that it should not become binding until approved by the Board of Contract Review; and it was not so approved.   In May, 1919, the contracting officer and the claimant executed another contract of settlement—which was duly approved—under which the United States paid $24,478.78 as full compensation for the services rendered and expenditures and obligations incurred by the claimant under both of the purchase contracts,[1] and in discharge of all its claims thereunder except that " for depreciation on schooner," which was reserved.

The petition prays judgment for $35,000, the amount of the loss alleged to have resulted to the claimant from depreciation in the value of the schooner, and for general relief.

---

[1] This contract recited that the second purchase contract had superseded the first.   This does not otherwise appear from the allegations of the petition.

The demurrer to the petition is based on the ground that the facts therein set forth do not state a cause of action against the United States.

This demurrer was properly sustained. It is clear that on the facts alleged the depreciation in the sale value of the schooner cannot be recovered on the theory which the claimant here urges, that this is compensation for a taking of the schooner "under eminent domain" in the performance of "obligatory orders or requisitions" for the sale and delivery of the castor beans. The United States did not requisition or take over the schooner, or appropriate its use. The first purchase contract gave the United States the option to require the castor beans to be delivered at any Gulf port in the United States; and the second specifically required them to be delivered at New Orleans. The United States, therefore, was entirely within its contract rights in insisting that the claimant should deliver the beans at New Orleans, as agreed; and if the claimant had no other means of so delivering them than by using its own schooner for that purpose, it was, in preparing so to do, merely conforming to its contract obligation.

There can be no recovery under the provision in the second contract that if terminated before completion the United States would pay the claimant for depreciation of the plant, facilities and equipment provided for its performance. Even if the use for transportation purposes of a schooner previously owned by the claimant could be regarded as the providing of a facility or equipment within the meaning of the contract, the obligation was merely to pay the difference between the "cost" of the facility or equipment to the claimant and its value at the termination of the contract, as determined by appraisers. There is no allegation as to the cost of the schooner; and no averment that its value at the termination of the contract was determined by appraisers. And for all that appears its

cost to the claimant may have been less than the amount for which it was sold.

Nor can there be any recovery on the theory that under the contract executed by the contracting officer in January, 1919, the United States agreed to pay $10,521.22 or any other sum, for depreciation loss on the schooner. This contract, not having been approved by the Board of Contract Review, became by its own terms, of no binding force or effect whatever.

The petition does not state a cause of action against the United States; and the judgment is

*Affirmed.*