**UNITED STATES of America,
Appellant,**

v.

**Edward J. DILLON, Appellee.
Petition of Manley B. STRAYER.**

**No. 19629.**

United States Court of Appeals
Ninth Circuit.

June 16, 1965.

Rehearing Denied July 27, 1965.

John W. Douglas, Asst. Atty. Gen., Morton Hollander, Robert V. Zener, Attys., Dept. of Justice, Washington, D. C., Sidney I. Lezak, U. S. Atty., Portland, Or., for appellant.

Clifford N. Carlsen, Jr., William B. Crow, King, Miller, Anderson, Nash & Yerke, Portland, Or., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and MATHES, District Judge.

JERTBERG, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Oregon, directing the United States to pay fees and expenses of counsel appointed by the court to represent a prisoner in connection with proceedings under 28 U.S.C. § 2255. The opinion of the district court, Dillon v. United States, is reported at 230 F.Supp. 487.

The jurisdiction of the district court to enter such a judgment against the United States was asserted under the Tucker Act, 28 U.S.C. § 1346. The jurisdiction of this Court over the present appeal rests on 28 U.S.C. § 1291.

The facts are not in dispute. The following summary is taken from appellant's brief, to which appellee takes no issue.

In a proceeding under 28 U.S.C. § 2255, Edward J. Dillon sought to set aside a sentence of 18 years for armed bank robbery. This sentence had been imposed after Dillon had pleaded guilty. Dillon alleged that the plea was induced by a false promise of a lenient sentence. The district court held a hearing on the petition under 28 U.S.C. § 2255 and denied the relief requested. During the course of this hearing, Dillon made a request for counsel, which was denied. See Dillon v. United States, supra.

This Court, with one member dissenting, reversed the district court's denial of relief, on the ground that counsel should have been appointed. Dillon v. United States, 307 F.2d 445. The case was remanded for a hearing.

Upon remand, the district court noted that this Court had premised its holding on the ground that the case presented a "subtle and difficult issue of fact." 307 F.2d at 451. The district court stated that "[i]n view of the Court of Appeals appraisal of the matter, I feel that I must

designate an attorney with some considerable experience and with some means."

The district court appointed Manley Strayer, Esquire, of the firm of Hart, Rockwood, Davies, Biggs & Strayer, of Portland, Oregon. At the time of the appointment, the district court stated that—

> "I think that in executing the command of the Court of Appeals I am conscripting your services for the benefit of another person to whom, I suggest, the government owes the duty to supply, and taking your property without just compensation."

Accordingly, the court invited Mr. Strayer to make application for compensation upon completion of his services.

At the hearing on Dillon's petition under 28 U.S.C. § 2255, the district court held that Dillon's plea of guilty had not been coerced or induced by a false promise. However, the sentence was vacated on the ground of a violation of Rule 32(a) of the Federal Rules of Criminal Procedure, Dillon being held for resentencing. Dillon v. United States, 218 F.Supp. 948 (D.Ore.)

Mr. Strayer then applied for compensation, pursuant to the district court's invitation. Mr. Strayer requested a fee of $5,000, plus expenses of $24.50.

The district court held that it had jurisdiction under the Tucker Act to grant the relief requested, either on the basis of an implied contract or the Fifth Amendment. The Tucker Act gives district courts jurisdiction concurrent with the Court of Claims of claims not exceeding $10,000 "founded either upon the Constitution * * * or upon any express or implied contract with the United States * * *." 28 U.S.C. § 1346(a) (2).

The district court further held that its order requiring Mr. Strayer to represent Dillon was a taking of Mr. Strayer's property for a public use, within the meaning of the Fifth Amendment, and that just compensation was therefore payable. The court ordered payment of compensation in the amount of $3804.54

representing $35 per hour for 108 hours, plus $24.54 expenses. The court noted that "the licensed services, backed by his law office, of Mr. Strayer, * * * in commerce, would justify a much greater amount * * *." But the court fixed the figure of $35 an hour "in view of the fact that the substance and weight of the traffic of this cause falls within the realm of humanities rather than commerce * * *."

While appellant argues in its brief that representation of indigents in criminal cases in the courts of the United States, by court appointed counsel, does not constitute involuntary servitude in violation of the Thirteenth Amendment to the Constitution of the United States, and that court appointed counsel in such cases have no contractual claim against the United States for compensation, the position of appellee, both on brief and oral argument is clear that he relies entirely upon the quoted provision of the Fifth Amendment to the Constitution of the United States. In his brief he states:

> "Appellee makes no claims relative to involuntary servitude. We agree that a court may issue a valid order compelling a lawyer to represent an indigent. The enforcement of civil rights by compelling the incidental giving of personal services cannot be considered an imposition of involuntary servitude."

Also in his brief it is stated:

> "Appellant argues that appellee has no contractual claim to compensation under the Tucker Act [28 USC 1346(a)]. The Tucker Act gives federal district courts original jurisdiction, concurrent with the Court of Claims, of civil actions founded upon either the Constitution or upon any express or implied contract with the United States. We make no contractual claim."

Appellee's counsel, in oral argument, confirmed the position of appellee as stated in his brief. In these circumstances it appears to us that the question which

we are called upon to decide may be properly stated as follows:

"DOES AN ATTORNEY WHO HAS BEEN APPOINTED BY A JUDGE OF A UNITED STATES DISTRICT COURT TO REPRESENT AN INDIGENT IN A CRIMINAL CASE [1] IN THE COURTS OF THE UNITED STATES, HAVE A RIGHT, UNDER THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, TO BE COMPENSATED FOR THE SERVICES HE RENDERS PURSUANT TO THE ORDER OF APPOINTMENT?"

In seeking to establish that appellee has no right under the Fifth Amendment to compensation for the services rendered, appellant relies upon two grounds: First, that there is no "taking" under the Fifth Amendment when a lawyer is required to fulfill an obligation which he has accepted; and, Second, that the term "property" as used in the Just Compensation Clause of the Fifth Amendment does not include personal services.

Appellant's brief contains a very complete and scholarly treatise which in our view establishes an obligation on the part of the legal profession to represent indigents upon court order, without compensation. We include portions of such brief in an appendix to this opinion. As the appendix points out, the obligation of the legal profession to serve indigents on court order is an ancient and established tradition, and that appointed counsel have generally been compensated, if at all, only by statutory fees which would be inadequate under just compensation principles, and which are usually payable only in limited types of cases. Further, as shown in the Appendix, the vast majority of the courts which have passed on the question have denied claims of ap-

pointed counsel for nonstatutory just compensation, pointing out that representation of indigents under court order, without a fee, is a condition under which lawyers are licensed to practice as officers of the court, and that the obligation of the legal profession to serve without compensation has been modified only by statute. An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a "taking of his services." Cf. Kunhardt & Company, Inc. v. United States, 266 U.S. 537, 45 S.Ct. 158, 69 L.Ed. 428 (1925).

In Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court held, in a capital case where the defendant was unable to employ counsel and was incapable of making his own defense adequately because of ignorance, etc., that it was the duty of the court to assign counsel for him, and stated at page 73, 53 S.Ct. page 65:

"Attorneys are officers of the court, and are bound to render service when required by such an appointment."

Appellee premises his claim to just compensation, in part, on the holdings of the Supreme Court in Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), and Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957), that a state cannot exclude a person from the practice of law in a manner or for reasons that contravene the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. Such deci-

1. We recognize that the mandatory requirement of the Sixth Amendment regarding lack of counsel does not apply to indigent movants under 28 U.S.C. § 2255. In Dillon v. United States, 307

F.2d 445, we held that compliance with the Due Process Clause of the Fifth Amendment required the appointment of counsel in this § 2255 proceedings.

sions do not support appellee's claim that there has been a taking of his services without just compensation when he performs an obligation imposed upon him by the ancient traditions of his profession and as an officer assisting the courts in the administration of justice.

The problem of providing some system of compensation for appointed counsel, in light of the developing law of the right of indigents to counsel, is a matter for legislative and not judicial treatment. This fact has been recognized by the Congress in the enactment of the Criminal Justice Act of 1964, 78 Stat. 552. The provisions of the Act clearly show that the compensation provided for in said Act is not based upon the principles of just compensation which appear in the Fifth Amendment.

Since we have arrived at the conclusion that there was no "taking", in the constitutional sense, of appellee's services, it is unnecessary for us to consider whether the services rendered by appellee constitute "property" within the meaning of that term as used in the Fifth Amendment.

The order of the District Court is reversed.

## APPENDIX

I. *Appointment of counsel to represent an indigent is not a taking of property under the Fifth Amendment*

    A. Representation of indigents is a traditional professional obligation of the bar, which a lawyer undertakes when he becomes a member of the bar. There is thus no "taking" when a lawyer is required to fulfill that obligation

Representation of indigents upon court order is an ancient tradition of the legal profession, going as far back as fifteenth-century England and pre-Revolutionary America. And yet counsel appointed to represent indigents have rarely received anything more than statutory fees which generally do not pay a lawyer what he could get elsewhere for his services. Thus, when a court requires a lawyer to represent an indigent without any compensation, or for less compensation than he could get elsewhere, the court is merely requiring the lawyer to discharge an obligation which is part of the professional tradition he assumed upon becoming a lawyer. There is no "taking."

The tradition of representation of indigents in England has existed for nearly half a millenium. In Holdsworth's A History of English Law, vol. 2, p. 491 (3d ed., 1923), it is stated that serjeants-at-law "from a very early period \* \* might be required by any of these courts [courts in which they could practice] to plead for a poor man." Holdsworth then cites examples from the Yearbooks of the fifteenth century.[2]

The commitment of the lawyer to serve upon court assignment was put in unequivocal terms in the seventeenth century by Chief Justice Hale, who stated that "if the Court should assign [a serjeant] to be counsel, he ought to attend; and if he refuse \* \* \* we would not hear him, nay, we would make bold to commit him." . . . . . . . . . . v. Scroggs, 1 Freeman 389, 89 Eng.Rep. 289 (King's Bench, 1674). See Trevianon v. Anon., 12 Mod. 389, 88 Eng.Rep. 1535 (King's Bench, 1702) (plaintiff moves for appointment of counsel "for none would voluntarily appear for him"; court appoints counsel). See also Beaney, Right to Counsel in American Courts 10 (1955) citing an example of appointment of counsel for a robber in 1755.

In England, the obligation of the lawyer to serve upon court assignment apparently developed as a matter of common law. It was not until 1695 that there was a limited statutory recognition of this obligation: a statute was passed requiring the courts to appoint counsel upon the request of a person ac-

---

**2.** Holdsworth also cites a request made by plaintiffs in 1292 that the court "grant them a serjeant" "for that they are poor folk." Holdsworth, op. cit. supra, at 491 n. 3.

cused of treason. 7 and 8 W.3, c.3, s.1 (1695).

However, in colonial America, there was, in addition to the common law, a more extensive statutory recognition of the obligation of counsel to represent indigents upon court order. This was in the form of several statutes requiring assignment of counsel upon request of accused persons unable to retain counsel —statutes presupposing the existence of an obligation on the part of counsel to serve when assigned. Thus a Pennsylvania statute of 1718 provides for assignment of counsel in the case of a large number of capital crimes. 3 Statutes at Large of Pennsylvania 1712–1724, pp. 199, 201 (Busch, 1896). See Commonwealth ex rel. McGlinn v. Smith, 344 Pa. 41, 45 n. 1, 24 A.2d 1, 3 n. 1 (1942). A Delaware statute of 1709 and a South Carolina statute of 1731 provided for assignment of counsel in the case of any capital offense—a category which included many more offenses than it does today. See Beaney, Right to Counsel in American Courts 16–17 (1955).

After the Revolutionary War, there was additional statutory, as well as common law, recognition that counsel might be ordered to represent indigent accused persons. A New Jersey statute of 1795 required the courts in all cases of indictment to assign counsel to persons not able to procure counsel. See Beaney, op. cit. supra at 18–22. Finally, federal statutory recognition of the obligation of counsel to serve when assigned came as early as 1790, when Congress passed an act requiring assignment of counsel at the request of any person accused of treason or other capital crime. 1 Stat. 118 (1790).

Thus the obligation of counsel to serve indigents is an ancient and established tradition of the legal profession. Any yet appointed counsel have generally been compensated, if at all, only by statutory fees which would be inadequate under just compensation principles and which are usually payable only in limited types of cases.

In view of the foregoing it is not surprising that the vast majority of courts, which have been passed on the question, have denied claims of appointed counsel for nonstatutory just compensation, pointing out that representation of indigents under court order without a fee is a traditional obligation of the bar and therefore a condition under which lawyers are licensed to practice as officers of the court. Posey & Tompkins v. Mobile County, 50 Ala. 6 (1873); Arkansas County v. Freeman & Johnson, 31 Ark. 266 (1876); Lamont v. Solano County, 49 Cal. 158 (1874); Rowe v. Yuba County, 17 Cal. 61 (1860) (Field, J.); Elam v. Johnson, 48 Ga. 348 (1873); Vise v. County of Hamilton, 19 Ill. 78 (1857); Johnson v. Whiteside County, 110 Ill. 22 (1884); Johnston v. Lewis and Clarke County, 2 Mont. 159 (1874); People ex rel. Whedon v. Board of Supervisors, 192 App.Div. 705, 183 N.Y.S. 438 (3d Dep't, 1920); Washoe Co. v. Humboldt Co., 14 Nev. 123, 128 (1879); Wayne County v. Waller, 90 Pa. 99 (1879); Ruckenbrod v. Millins, 102 Utah 548, 133 P.2d 325, 144 A.L.R. 839 (1943); Presby v. Klickitat County, 5 Wash. 329, 31 P. 876 (1892); Nabb v. United States, 1 Ct. Cl. 173 (1863). See House v. Whitis, 64 Tenn. (5 Baxt.) 690, 692 (1875). Claims of appointed counsel for nonstatutory just compensation have also been denied on a variety of other grounds. Case v. Board of Com'rs of Shawnee County, 4 Kan. 511 (1868); State v. Simmons, 43 La.Ann. 991, 10 So. 382 (1891); Bacon v. County of Wayne, 1 Mich. 461 (1850); Dismukes v. Board of Supervisors, 58 Miss. 612 (1881); Kelley v. Andrew County, 43 Mo. 338 (1869); People ex rel. Ransom v. Board of Supervisors, 78 N.Y. 622 (1879); Pardee v. Salt Lake County, 39 Utah 482, 118 P. 122, 36 L.R.A.,N.S., 377 (1911).

Clearly, the lawyer's traditional obligation to represent indigents upon court order has not included any common-law right to compensation. And the statutory compensation which exists in some states usually contains limitations which in most cases would prevent a lawyer from receiving what his time is worth when working for private clients—limitations which would clearly be invalid if

constitutional standards of just compensation were applicable. See Brownell, Legal Aid in the United States, Appendix C (1951) (listing and summarizing state statutes providing for compensation of appointed counsel). These statutory fees, which frequently cover capital cases only, range from the Kansas maximum of $10 a day, Kans.Gen.Stat. 62–1304 (Supp. 1961), to the $1,500 maximum per case in New York (for capital cases only). Section 308, New York Code of Criminal Procedure (McKinney's, Supp. 1964). In Oregon, appointed counsel in a felony case is limited to a maximum of $75 per day of trial, and may not recover for more than three days of trial. Ore.Rev. Stat. 135.330. In short, the ancient, traditional obligation of lawyers to represent indigents on court order has, for most of the many years of its existence, been an obligation to serve without compensation, and has been modified by statute only to allow fees which generally do not give the lawyer what his time is worth and which often are payable only in limited types of cases.[3]

A Fifth Amendment "taking" does not occur when the state simply requires an individual to fulfill a commitment he has made. Kunhardt & Co. v. United States, 266 U.S. 537, 45 S.Ct. 158, 69 L.Ed. 428. An applicant for admission to the bar may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court, obligated to represent indigents for little or no compensation upon court order. Thus the lawyer has consented to and assumed this obligation, and when he is called upon to fulfill it he cannot contend that there is a taking.

---

3. There are only three states in which the courts have held that appointed counsel have a non-statutory right to just compensation. In Indiana, this result has been reached on the basis of a provision of the State constitution that "no man's particular *services* shall be demanded without just compensation." Indiana Constitution, art. 1, § 21. (Emphasis supplied.) Knox County Council v. State ex rel. McCormick, 217 Ind. 493, 29 N.E. 2d 405, 130 A.L.R. 1427 (1940); Webb v. Baird, 6 Ind. 13 (1854). (We demonstrate below that the just compensation clause of the Fifth Amendment does not apply to personal services.) ,

In Wisconsin, the initial holding that appointed counsel was entitled to just compensation as a matter of constitutional right, County of Dane v. Smith, 13 Wis. 585 (1861), was impliedly overruled by Green Lake County v. Waupaca County, 113 Wis. 425, 89 N.W. 549 (1902), where it was held that appointed counsel was limited to the statutory fee, although it was obviously inadequate as a matter of just compensation, on the ground that lawyers as officers of the court have the implied obligation to represent indigents.

The course of events in Wisconsin was a repetition of what had happened in Iowa. An old Iowa case held that appointed counsel were entitled to just compensation on constitutional grounds. Hall v. Washinton Co., 2 G.Greene (Iowa) 473 (1850). Then a statute was passed in 1860, allowing compensation to appointed counsel but limiting it to $25. In Samuels v. County of Dubuque, 13 Iowa 536 (1862), the court rejected an attack on this fee limitation as in violation of the just compensation clause of the state constitution, holding that representation of indigents is a duty of attorneys as "officers of the law."