**J. D. WILLIAMSON, Jr., Appellant,**

v.

**Paul E. VARDEMAN, Judge of Jackson County, and Susan Stanton, Appellees.**

No. 81–1863.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1982.

Decided April 6, 1982.

---

Robert G. Duncan, Kansas City, Mo., for appellant.

Albert A. Riederer, Pros. Atty. in and for Jackson County, Mo. by Robert Frager, Asst. Pros. Atty., Kansas City, Mo., for appellees.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and WOODS,[*] District Judge.

LAY, Chief Judge.

The sole issue in this case is whether the courts of Missouri may compel private attorneys to represent indigent defendants when the state legislature has failed to appropriate sufficient funds to compensate lawyers for their services or to pay expenses deemed necessary for the defense of the accused.

On April 9, 1981, a state circuit judge, the Honorable Paul E. Vardeman, appointed petitioner, J. D. Williamson, to represent Robert Powell, an indigent, charged with four counts of sale of a controlled substance. In its order, the court stated that, unless it was prohibited from doing so, it would make the appointment despite the fact that petitioner might not receive payment or recover his expenses.

Williamson filed a petition for a writ of prohibition in the Missouri Supreme Court. On May 13, 1981, the court denied the petition. Williamson then moved in the trial court for an evidentiary hearing on the issue of his appointment and for an order authorizing the prepayment of expenses or, in the alternative, dismissing the case.[1] At the evidentiary hearing, Williamson admitted that the appointment would not burden him in a manner qualitatively different than any other private practitioner and the

---

[*] Henry Woods, United States District Judge, Eastern District of Arkansas, sitting by designation.

1. These procedures are provided for in *State ex rel. Wolff v. Ruddy*, 617 S.W.2d 64, 67 (Mo. en banc 1981), discussed *infra.*

court therefore refused to discharge him. Williamson then alleged that an adequate defense of Powell would entail taking several depositions, hiring an investigator, and possibly retaining other experts to evaluate laboratory evidence. Williamson requested that the court order the State to advance funds to meet these expenses, but the court indicated that no funds remained to pay such costs. · The following colloquy took place:

THE COURT: Well, I would be willing to order the advancement of costs; I'm doubtful they would pay it. I am informed they don't have any money.

MR. WILLIAMSON: Your Honor, I had a conversation with Mr. Willard Bunch, who is a member of the Public Defender's Commission, within the last couple of days and I was advised by him that the Public Defender's Commission has zero money, no money at all to comply with any orders such as this Court might enter.

THE COURT: I don't see how I can order them to pay if they don't have any money, do you?

MR. WILLIAMSON: I don't think so, Judge, I don't believe you can.

But I think that you then should determine whether or not the expenses are such that this Defendant should be discharged based on the lack of funds to prepare for his defense.

THE COURT: Well, I don't think that the Court intended that the Defendants be discharged except under very unusual circumstances and I am not persuaded that is the course to take. I think that somebody could represent this man adequately without advancement of these costs, at least in the amount that you suggest.

I guess I am not required to do a useless act. I know as a matter of fact that the Public Defender's Commission doesn't have funds to advance these costs but if you think it appropriate, I will enter an order directing them to pay this $500.00. It is obvious it is not going to be forthcoming. The Court held in the

Wolfe [sic] case, if the costs are not forthcoming then the Court may dismiss, but I am not going to do that.

What did you start to say, I interrupted you?

MR. WILLIAMSON: I would agree with the statement that you just made to enter an order requesting money from the Public Defender is futile; if there isn't any money there they can't pay it. I do request these charges be dismissed.

THE COURT: That request is denied.

Williamson then refused to serve and the court thereupon held him in contempt and sentenced him to a prison term of ten days. The court stayed execution of the judgment in order to give Williamson an opportunity to seek appellate review and apply for a writ of habeas corpus.

On June 17, 1981, Williamson filed a petition for a writ of habeas corpus in the Missouri Supreme Court (Missouri law does not provide for appeal from a contempt citation). He alleged that confinement would constitute involuntary servitude and deprive him of liberty and property without due process in violation of both the Missouri and United States Constitutions. On July 14, 1981, the Supreme Court of Missouri, without argument or briefing, denied relief.

On July 20, 1981, Williamson filed a petition for habeas relief in federal district court. On July 28, Judge Howard F. Sachs dismissed the petition. This appeal followed. We reverse and order that the writ of habeas corpus be granted.

On appeal Williamson asserts (1) that requiring him to render services without compensation violates the thirteenth amendment prohibition of involuntary servitude and constitutes a taking of liberty and property without due process in violation of the fourteenth amendment and (2) that requiring counsel to pay expenses incident to defense of the accused without reimbursement similarly violates the due process clause.

The Missouri Supreme Court has confronted these issues on several occasions. In *State v. Green*, 470 S.W.2d 571 (Mo. en banc 1971), the court held that the burden of representing indigent defendants with-

out compensation or reimbursement had become unconstitutionally large. The court stated that after September 1, 1972, it would "not *compel* the attorneys of Missouri to discharge *alone*" a duty which constitutionally is the burden of the State. *Id.* at 573. Thereafter, as pointed out in *State ex rel. Wolff v. Ruddy*:

In 1972, the General Assembly declared the public policy of Missouri to be that in cases where counsel, other than public defenders, are appointed to represent indigent defendants "the reimbursement of expenses and the attorney's fees for services shall be paid by the state from funds appropriated for that purpose."

617 S.W.2d 64, 65 (Mo. en banc 1981). In 1981, the General Assembly appropriated a total of only $3,475,894 to finance representation of indigent defendants. As of June 30, 1981, all the appropriated money was spent. *Id.* at 65.

In a recent opinion, *State ex rel. Wolff v. Ruddy*, 617 S.W.2d 64 (Mo. en banc 1981), the Missouri Supreme Court outlined the procedure to be followed in appointing counsel to represent indigents when sufficient funds are not appropriated. The court first traced the history of such appointment in Missouri and discussed the public nature of the lawyer's role. It concluded that an obligation to defend indigents without fee was implicit in this role and was assumed upon taking the oath which all lawyers take before being admitted to practice in the State of Missouri. This obligation had been recognized earlier in *State ex rel. Gentry v. Becker*, 351 Mo. 769, 174 S.W.2d 181 (1943). The court there observed:

A better reason for not allowing counsel compensation in such cases is that "when a lawyer takes his license he takes it burdened with certain honorary obligations. He is a sworn minister of justice, and when commanded by the court he cannot withhold his services in cases prosecuted in forma pauperis." 1 Thornton, Attorneys at Law, Sec. 86, pp. 143, 144.

174 S.W.2d at 184.

With this background and confronting the problem of insufficient funds, the court in *Wolff* adopted temporary guidelines to govern appointment of counsel which provide: (1) circuit judges should require strong proof of indigency; (2) appointed counsel may request a hearing in order to show that the appointment would create undue hardship; (3) failure to compensate a lawyer for prior service within 120 days is grounds for excusing the lawyer from additional service; (4) a hearing should be held to determine what expenses are necessary, the State should be ordered to pay such expenses, and, if the State fails to so pay within the time during which the accused must be tried, the court should discharge the accused; (5) government employment is not necessarily a bar to appointment; and (6) the public defender commission shall pay fees and costs in the order certified. 617 S.W.2d at 67.

■ We have no difficulty concluding that the procedure established in *Wolff* is a constitutional mode of selecting counsel to represent indigent defendants. Attorneys may constitutionally be compelled to represent indigent defendants without compensation. The thirteenth amendment has never been applied to forbid compulsion of traditional modes of public service even when only a limited segment of the population is so compelled. *See Hurtado v. United States*, 410 U.S. 578, 589–90 n.11, 93 S.Ct. 1157, 1164–65 n.11, 35 L.Ed.2d 508 (1973) (witnesses); *Selective Draft Law Cases*, 245 U.S. 366, 390, 38 S.Ct. 159, 165, 62 L.Ed. 349 (1918) (draft); *Butler v. Perry*, 240 U.S. 328, 333, 36 S.Ct. 258, 259, 60 L.Ed. 672 (1916) (work on public roads); *Bertelson v. Cooney*, 213 F.2d 275, 277–78 (5th Cir.), *cert. denied*, 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 674 (1954) (special draft of medical personnel).

The vast majority of federal and state courts which have addressed the due process issue have decided that requiring counsel to serve without compensation is not an unconstitutional taking of property without just compensation. *See, e.g., Tyler v. Lark*, 472 F.2d 1077, 1078–79 (8th Cir.), *cert. de-*

*nied,* 414 U.S. 864, 94 S.Ct. 114, 38 L.Ed.2d 84 (1973); *United States v. Dillon,* 346 F.2d 633, 635–36 (9th Cir. 1965), *cert. denied,* 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966); *Daines v. Markoff,* 92 Nev. 582, 555 P.2d 490, 493 (1970); *Jones v. Commonwealth,* 411 S.W.2d 37 (Ky.1967); *Warner v. Commonwealth,* 400 S.W.2d 209, 211–12 (Ky.), *cert. denied,* 385 U.S. 858, 87 S.Ct. 108, 17 L.Ed.2d 85 and 385 U.S. 885, 87 S.Ct. 178, 17 L.Ed.2d 112 (1966); *Jackson v. State,* 413 P.2d 488, 489–90 (Alaska 1966); *Weiner v. Fulton County,* 113 Ga.App. 343, 148 S.E.2d 143, 146, *cert. denied,* 385 U.S. 958, 87 S.Ct. 393, 17 L.Ed.2d 304 (1966); *State v. Superior Court in County of Pima,* 2 Ariz.App. 466, 409 P.2d 750, 755 (1966); *State v. Clifton,* 247 La. 495, 172 So.2d 657, 667 (1965); *Scott v. State,* 216 Tenn. 375, 392 S.W.2d 681, 685–87 (1965); *Bibb County v. Hancock,* 211 Ga. 429, 86 S.E.2d 511, 518 (1955); *Ruckenbrod v. Mullins,* 102 Utah 548, 133 P.2d 325 (1943); *Presby v. Klickitat County,* 5 Wash. 329, 31 P. 876 (1892). *But see Bradshaw v. Ball,* 487 S.W.2d 294, 298 (Ky.1972); *Bedford v. Salt Lake County,* 22 Utah 2d 12, 447 P.2d 193 (1968); *Blythe v. State,* 4 Ind. 525 (1853) (state constitution's takings clause). These courts reason that compulsion of service is not a taking because there is a preexisting duty to provide such service. *Cf. Hurtado v. United States,* 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973).[2] The source of this duty is a lawyer's status as an officer of the court. In *Dillon,* Judge Jertberg stated:

An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a "taking of his services." *Cf. Kunhardt & Company, Inc. v. United States,* 266 U.S. 537, 45 S.Ct. 158, 69 L.Ed. 428 (1925).

In *Powell v. State of Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court held, in a capital case where the defendant was unable to employ counsel and was incapable of making his own defense adequately because of ignorance, etc., that it was the duty of the court to assign counsel for him, and stated at page 73, 53 S.Ct. page 65:

"Attorneys are officers of the court, and are bound to render service when required by such an appointment."

346 F.2d at 635.[3]

We hold that compulsion of services without compensation under the procedure set forth in *Wolff* does not contravene the federal Constitution.

■ Requiring lawyers to pay the necessary expenses of criminal defense work without reimbursement is, however, constitutionally distinct from merely compelling lawyers to provide their services. Expenses might include investigatory services, deposition costs, witness fees, payment of expert witnesses, and similar outlays. While we understand that in many cases, because of lost opportunities and payment of fixed costs, the burden of providing services without compensation is comparable to that of paying expenses, lawyers have no duty to pay expenses. The class of lawyers has no more obligation to pay such expenses than any other class of citizens. Compelling individual attorneys to bear such costs raises serious due process issues.

---

**2.** In *Hurtado,* the Court held that the federal government need not compensate material witnesses who are incarcerated because they are unable to post bail. The Court held, "[T]he Fifth Amendment does not require that the Government pay for the performance of a public duty it is already owed." 410 U.S. at 588, 93 S.Ct. at 1163. The Court cited *Dillon,* 346 F.2d at 635, in support of this proposition. *Dillon* held that a state need not compensate an attorney appointed to represent an indigent defendant.

**3.** Following the *Dillon* decision is an appendix detailing the "ancient tradition" of such service. Representation of indigents upon court order occurred as far back as fifteenth century England and prerevolutionary America. *See* 346 F.2d at 636–38, T. Cooley, 1 A Treatise on Constitutional Limitations 700 n.4 (8th ed. 1927).

■ If the *Wolff* procedures had been followed, this problem would have been averted. In *Wolff*, the Missouri Supreme Court stated:

> We know of no requirement of either law or professional ethics which requires attorneys to advance personal funds in substantial amounts for the payment of either costs or expenses of the preparation of a proper defense of the indigent accused. If after evidentiary hearing, reasonable and necessary costs ordered advanced by the court are not forthcoming and available for preparation of the proper defense of the indigent within the time required by law for the trial of the accused, § 545.780, RSMo 1978, or where the court is unable to find and appoint counsel for the indigent accused who can prepare for trial within the time required by law, the court should on proper motion where necessary to protect the constitutional rights of the accused, order discharge of the accused.

617 S.W.2d at 67.

It is clear the Missouri Supreme Court does not require counsel to jeopardize their personal finances by paying expenses incident to defense of an indigent defendant in a criminal case. Under the Supreme Court's guidelines, the trial court is to (1) determine whether requested expenses are necessary, (2) order the State to pay necessary expenses, (3) allow the State the prescribed time to pay the expenses, and (4) if the State fails to do so, discharge the accused.

■ In the present case, the state trial court failed to follow this procedure. We view the procedure for insuring reimbursement of expenses set forth in *Wolff* as not only Missouri law on the subject, but as the minimal protection necessary to satisfy the requirements of the fourteenth amendment. The trial court apparently found that counsel needed to expend $500 to provide an adequate defense. However, the trial court did not enter an order requiring the State to pay the $500. The court considered such an order a futile act because the appropriated money had already been expended. At the same time, counsel was informed that the court would not dismiss the charges against the accused. Although the State did not have an opportunity to pay the expenses, in view of the court's statement, this was not the fault of the petitioner. He made the proper request. Under these circumstances, the case is in no different posture than if the court ordered the State to pay the funds necessary for the defense, the State failed to do so, and the court refused to discharge the accused. We need not determine whether the refusal to discharge the accused would, under the circumstances, deny the defendant a constitutionally adequate defense. Counsel's rights were violated when he was asked to pay the expense involved in defending an indigent and held in contempt when he refused to assume the defense under these conditions.

Thus, although we find Missouri has adopted a constitutional procedure, we hold the trial court impermissibly failed to implement that procedure by denying counsel's request for an order requiring the State to pay his expenses or upon the State's failure to so pay, that the court discharge the accused. If this procedure had been followed, counsel would have been relieved of his appointment. This did not happen. Counsel was thus ordered to advance payment of funds necessary to the defense of the accused. We find that execution of this order would constitute a "taking" of counsel's property without just compensation in violation of the due process clause of the fourteenth amendment.

We therefore reverse the trial court's order and direct that the writ of habeas corpus be granted.