**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARK V. SCHEEHLE,
        *Plaintiff-Appellant,*

    v.

JUSTICES OF THE SUPREME COURT OF
ARIZONA; REBECCA WHITE BERCH;
ANDREW D. HURWITZ; CHARLES E.
JONES; RUTH V. MCGREGOR;
MICHAEL D. RYAN; JUDGES OF THE
SUPERIOR COURT OF THE STATE OF
ARIZONA, IN AND FOR THE
COUNTY OF MARICOPA; COLIN F.
CAMPBELL; MARGARET H. DOWNEY;
MICHAEL A. MCVEY; JONATHAN H.
SCHWARTZ,
        *Defendants-Appellees.*

No. 05-17063
D.C. No.
CV-98-01095-SMM
OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted
October 18, 2007—San Francisco, California

Filed November 15, 2007

Before: Jane R. Roth,* Sidney R. Thomas, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

*The Honorable Jane R. Roth, Senior United States Circuit Judge for
the Third Circuit, sitting by designation.

14927

## COUNSEL

Mark V. Scheehle, of Prescott Valley, Arizona, for plaintiff-appellant Mark V. Scheehle.

Terry Goddard, Arizona Attorney General, and Paula S. Bickett (argued), Chief Counsel — Civil Appeals, of Phoenix, Arizona, for the defendants-appellees.

## OPINION

CALLAHAN, Circuit Judge:

Mark V. Scheehle, an Arizona tax lawyer, challenges as an unconstitutional taking the Arbitrator Appointment System of the Maricopa County Superior Court ("Appointment System"), which requires that an experienced attorney serve as an arbitrator for up to two days a year with minimal compensation. Following a decision by the Arizona Supreme Court that the Appointment System was permissible under Arizona law, the district court reaffirmed its grant of defendants' motion for summary judgment. We now affirm. We hold that Scheehle's constitutional challenge to the Appointment System is properly considered under the regulatory takings test set forth in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978), and applying that test, we conclude that the impact of the Appointment System on Scheehle does not amount to a taking for which Scheehle is entitled to compensation under the Fifth Amendment.

### I.

Arizona law requires that each superior court, by rule of court, provide for the arbitration of cases in which the amount in controversy does not exceed $65,000. Ariz. Rev. Stat. § 12-133. At the time this action was filed, the Local Rules of Practice for the Superior Court of Maricopa County required that all attorneys who reside in the county and have been active members of the Arizona Bar for five years serve as arbitrators.[1] Attorneys who served as arbitrators under the Appointment System were paid a flat fee of $75 for each day in which they actually conducted an arbitration hearing. The Superior Court

---

[1] It appears that subsequent amendments to the Arizona Rules of Civil Procedure may have extended the requirement to serve as an arbitrator to attorneys who have been active members of the Arizona Bar for at least four years.

rules further provided that an attorney who had served as an arbitrator for two or more days during the year could be excused.

Scheehle has been a member of the Arizona Bar since 1981, and a certified tax specialist since 1988. In September 1996, Scheehle was appointed as the arbitrator in a motor vehicle personal injury action. He served as an arbitrator and submitted a report to the Maricopa Superior Court in December 1997. In July 1997, Scheehle was appointed as the arbitrator in a second motor vehicle personal injury suit and accepted the appointment. In October 1997, while still serving as the arbitrator in the second action, Scheehle was appointed as the arbitrator in a third personal injury action.

Scheehle decided to challenge the authority of the Arizona courts to require that he serve as an arbitrator. He returned the file to the Presiding Arbitration Judge of the Maricopa County Superior Court with a letter declining to serve as an arbitrator. He also expressed his unwillingness to serve as an arbitrator in any subsequent case, and his belief that the Appointment System was unconstitutional and violated Arizona law. The judge responded by holding a telephone conference at which Scheehle placed his objections on the record. The judge further encouraged Scheehle to apply for relief for good cause shown from the particular assignment, but Scheehle declined, choosing to challenge the Appointment System as a whole. Scheehle was allowed to file a brief in support of his position. In January 1998, the Presiding Arbitration Judge entered an order rejecting Scheehle's arguments and imposing a $900 sanction on Scheehle for refusing the arbitrator appointment.[2]

Scheehle chose to initially challenge the sanction order by filing a Petition for Special Action with the Arizona Supreme

---

[2]Scheehle was again appointed to arbitrate a case in July 1998, but because of his ongoing legal challenge to the arbitration system, he was excused.

Court, but the Arizona Supreme Court declined to accept jurisdiction over the petition. Scheehle then filed a complaint in the United States District Court for the District of Arizona naming the justices of the Arizona Supreme Court as the lead defendants. The complaint alleged that the Appointment System amounted to (1) an unconstitutional taking of property rights under the Fourteenth Amendment, (2) a denial of due process under the Fourteenth Amendment, (3) a denial of equal protection under the Fourteenth Amendment, (4) a denial of rights of freedom of speech and freedom of association under the Fourteenth Amendment, (5) involuntary servitude in violation of the Thirteenth Amendment, and (6) violation of the separation of powers doctrine. The complaint also asserted supplemental state law claims.

On January 28, 2000, the district judge issued an order granting summary judgment to defendants on all of Scheehle's claims under the Constitution and dismissing his supplemental state law claims. The district court concluded:

> Plaintiff's claims under the United States Constitution must fail. The limited service required of attorneys by the Maricopa system is too minimal to constitute a compensable taking of property. Plaintiff has raised no evidence of a procedural flaw in his treatment by the Maricopa courts, nor has he supported his equal protection arguments. Plaintiff's First and Thirteenth Amendment claims have no basis in facts or in existing law.

Scheehle filed an appeal with this court asserting that the Appointment System constituted a taking of his property without compensation in violation of the Fifth Amendment and violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Although we initially affirmed the district court's grant of summary judgment, we subsequently vacated that opinion[3] and certified a question concern-

---

[3]*Scheehle v. Justices of Supreme Court of State of Arizona*, 269 F.3d 1127 (9th Cir. 2001), *withdrawing Scheehle v. Justices of the Supreme Court of Arizona*, 257 F.3d 1082 (9th Cir. 2001).

ing the propriety of the Appointment System to the Arizona Supreme Court. After the Arizona Supreme Court answered the certified question, we remanded the case to the district court. *Scheehle v. Justices of the Supreme Court of Arizona*, 315 F.3d 1191 (9th Cir. 2003).

On remand, the district court, at Scheehle's request, again certified a question concerning the propriety of the Appointment System under Arizona law to the Arizona Supreme Court. The Arizona Supreme Court accepted the certification and held that it had "authority to promulgate a court rule authorizing the superior courts in each county of this state to require active members of the state bar to provide limited service as arbitrators." *Scheehle v. Justices of the Supreme Court of Arizona*, 211 Ariz. 282, 285, 120 P.3d 1092, 1095 (2005).

Following receipt of the Arizona Supreme Court's opinion, the district court denied Scheehle's motion for reconsideration of summary judgment and entered judgment. The case is again before us on Scheehle's timely appeal from the judgment.

II.

We review the district court's grant of summary judgment de novo. *Thomas v. City of Beaverton*, 379 F.3d 802, 807 (9th Cir. 2004). However, this is not a situation where there are any outstanding questions of fact. Rather, the provisions of the Appointment System are known, as is the authority for the system under Arizona law. Thus, Scheehle's claim that the Appointment System violates the Just Taking Clause of the Fifth Amendment is ripe for determination.

Scheehle asserts that the Appointment System implicates two distinct types of property interests: (1) his services as a lawyer, and (2) his out-of-pocket costs necessarily incurred in arbitrating a case. He contends that he is deprived "of the economic benefit of his labor when his services are taken for

public use as an arbitrator." He notes that numerous courts have recognized that a lawyer has a property interest in his or her law practice, as well as the funds a lawyer must expend in order to practice law. From this premise, Scheehle reasons that "a court appointment compelling an attorney to serve as an arbitrator is a taking of property for which just compensation is required." Scheehle further asserts that cases addressing real property takings that apply the regulatory takings test are not applicable to his case because the time and effort an attorney "devotes to serving as an arbitrator can never be recovered, and the attorney is deprived of all economically beneficial use of such time and effort."

A. *Scheehle has not shown that he is entitled to compensation under the regulatory takings test.*

There is no question that the Appointment System deprived Scheehle of something. The question is whether the deprivation is of a nature or amount such as to constitutionally require compensation. In *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005), Justice O'Connor sets forth the framework to Scheehle's contentions. She noted:

> The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, see *Chicago, B. & Q.R. Co. v. Chicago,* 166 U.S. 226, . . . (1897), provides that private property shall not "be taken for public use, without just compensation." As its text makes plain, the Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, . . . (1987). In other words, it "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Id.,* at 315, . . . (emphasis in original).

. . .

> Beginning with [*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922)], however, the Court recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster — and that such "regulatory takings" may be compensable under the Fifth Amendment. In Justice Holmes' storied but cryptic formulation, "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." 260 U.S., at 415, . . . The rub, of course, has been — and remains — how to discern how far is "too far." In answering that question, we must remain cognizant that "government regulation — by definition — involves the adjustment of rights for the public good," *Andrus v. Allard,* 444 U.S. 51, 65, . . . (1979), and that "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law," *Mahon, supra,* at 413.

544 U.S. at 536-38.

**[1]** Since the Fifth Amendment does not prohibit the taking of private property, but rather "places a condition on the exercise of that power," we must look to how the Supreme Court has defined that condition. In *Penn Central*, the Court observed that the "question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty." 438 U.S. at 123. The Court proceeded to identify several factors of particular significance to an evaluation of a regulatory takings claim. In *Lingle,* the Court summarized these factors as follows:

> Primary among those factors are "[t]he economic impact of the regulation on the claimant and, particu-

larly, the extent to which the regulation has inter-
fered with distinct investment-backed expectations."
[438 U.S. at 124.] In addition, the "character of the
governmental action" for instance whether it
amounts to a physical invasion or instead merely
affects property interests through "some public pro-
gram adjusting the benefits and burdens of economic
life to promote the common good" — may be rele-
vant in discerning whether a taking has occurred.
*Ibid.* The *Penn Central* factors — though each has
given rise to vexing subsidiary questions — have
served as the principal guidelines for resolving regu-
latory takings claims that do not fall within the phys-
ical takings or *Lucas* rules. See, *e.g., Palazzolo v.
Rhode Island,* 533 U.S. 606, . . . ; *id.,* at 632-634, . . .
(O'Connor, J., concurring).

Although our regulatory takings jurisprudence can-
not be characterized as unified, these three inquiries
(reflected in *Loretto, Lucas*, and *Penn Central* )
share a common touchstone. Each aims to identify
regulatory actions that are functionally equivalent to
the classic taking in which government directly
appropriates private property or ousts the owner
from his domain. Accordingly, each of these tests
focuses directly upon the severity of the burden that
government imposes upon private property rights.

544 U.S. at 538-39.

**[2]** When the regulatory takings test factors are applied to
Scheehle's claim, the compelled conclusion is that there has
been no constitutional taking. First, the economic impact of
the imposition on Scheehle is negligible. He is required to
devote two days out of the 365 days in a year to arbitration.
Moreover, there is no showing or suggestion that this obliga-
tion interfered with any existing legal work.[4] Second, the obli-

---

[4]The Appointment System appears to allow for recusals if the arbitra-
tion would interfere with an attorney's existing obligations to clients.

gation does not interfere with any "distinct investment-backed expectations." To the contrary, in accepting admission to the Arizona Bar, and in practicing before the Maricopa Superior Court, Scheehle voluntarily became an officer of the court with the concomitant obligation to render service to the court when requested. *See United States v. Dillon*, 346 F.2d 633, 635 (9th Cir. 1965); *see also Powell v. Alabama*, 287 U.S. 45, 65 (1932). Third, the Appointment System "merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the public good.' " *Lingle*, 544 U.S. at 539. In return for a license to practice law in Arizona, Scheehle is obligated to serve for two days a year as an arbitrator — a position that his training as a lawyer (despite his subsequent specialization), admission to the bar, and years of practice make him particularly qualified to perform. There is no suggestion, nor will the record support the suggestion, that this two-day obligation remotely outweighs the benefits conferred by admission to the practice of law. In sum, the Appointment System's imposition on Scheehle when evaluated under the regulatory takings test is not a "taking" under the Fifth Amendment that requires compensation.[5]

B.  *The* per se *test for takings under the Fifth Amendment is not applicable to Scheehle's claim.*

Scheehle seeks to avoid the compelled result of the application of the regulatory takings test by urging that we should use a *per se* test because the time and effort an attorney "devotes to serving as an arbitrator can never be recovered, and the attorney is deprived of all economically beneficial use of such time and effort." He asserts that like the interest income

---

[5]The district court properly rejected Scheehle's claim for out-of-pocket expenses noting that he had not quantified his actual costs and expenses or indicated that they exceeded the $75.00 per day which he received for serving as an arbitrator. On appeal, Scheehle has not argued that the district court's findings were wrong.

at issue in *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998),[6] his "law license, knowledge, training, experience, expertise, skill, time, and energies" are intangible properties that may not be taken without the payment of just compensation.

[3] Scheehle's approach, however, is contrary to case law and circuit precedent. In *Lingle*, 544 U.S. at 537-38, the Supreme Court discussed when a *per se* rule should be used. It first noted that over the years it has recognized "that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster — and such 'regulatory takings' may be compensable under the Fifth Amendment." *Id.* at 537. The Court's indication that only "onerous" regulations require compensation implicitly confirms that the regulatory takings test is the general standard. Indeed, the Court went on to state:

> Our precedents stake out two categories of regulatory action that generally will be deemed *per se* takings for Fifth Amendment purposes. First, where government requires an owner to suffer a permanent physical invasion of her property — however minor — it must provide just compensation. *See Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S.

---

[6]*Phillips* does not support Scheehle's claim because there the Supreme Court determined that under an Interest on Lawyers Trust Account (IOLTA) program, the interest earned was private property. Here, there is no question that Scheehle's services constitute private property. Moreover, *Phillips* appears to have been limited by the Supreme Court's subsequent opinion in *Brown v. Legal Foundation of Washington*, 538 U.S. 216 (2003). There the Court held that where private property is taken, the "just compensation" required by the Fifth Amendment "is measured by the property owner's loss rather than the government's gain," *id.* at 235-36, and appears to place the burden of showing loss on the claimant. *Id.* at 236-37. Thus, even if the *per se* test were applicable, it is not clear whether Scheehle would be able to rely on his hourly rate or would be required to present evidence of work actually lost or declined due to his serving as an arbitrator.

419, . . . (1982) . . . . A second categorical rule applies to regulations that completely deprive an owner of "*all* economically beneficial us[e]" of her property. *Lucas,* 505 U.S., at 1019, . . . (emphasis in original). . . .

Outside these two relatively narrow categories . . . , regulatory takings challenges are governed by the standards set forth in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, . . . (1978).

544 U.S. at 538.

**[4]** Scheehle's claim does not fit within either of these exceptions to the application of the regulatory takings test. Obviously the obligation to serve two days a year as an arbitrator does not deprive Scheehle of "all economic beneficial use" of his license. His better argument is that the two-day obligation is in essence a minor, but permanent, physical invasion of his property. This argument, however, depends on viewing any imposition by a state on an attorney's time as a discrete deprivation of property requiring compensation under the Fifth Amendment. This view has been rejected by court decisions recognizing that states may regulate the practice of law. *See Leis v. Flynt*, 439 U.S. 438, 442 (1979) ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions.")

**[5]** The position that any imposition on an attorney's time must be compensated is foreclosed by our opinions in *Dillon*, 346 F.2d 633, and *United States v. 30.64 Acres of Land*, 795 F.2d 796 (9th Cir. 1986). In *Dillon*, this court held that there was "an obligation on the part of the legal profession to represent indigents upon court order, without compensation." 346 F.2d at 635. The adoption of the balancing approach of the regulatory takings test rather than a *per se* approach is clear from the opinion, which went to note:

> An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a "taking of his services." Cf. *Kunhardt & Company, Inc. v. United States*, 266 U.S. 537, . . . (1925).

> In *Powell v. State of Alabama*, 287 U.S. 45, . . . (1932), the Supreme Court held, in a capital case where the defendant was unable to employ counsel and was incapable of making his own defense adequately because of ignorance, etc., that it was the duty of the court to assign counsel for him, and stated at page 73, . . . :

> "Attorneys are officers of the court, and are bound to render service when required by such an appointment."

346 F.2d at 635.

Any doubt that a state could require some services from an attorney without compensation was dissolved by our opinion in *30.64 Acres of Land*, where we noted:

> Courts have long recognized that attorneys, because of their profession, owe some duty to the court and to the public to serve without compensation when called on.

> [T]he obligation of the legal profession to serve indigents on court order is an ancient and established tradition, and . . . appointed counsel have generally been compensated, if at all, only by statutory fees

which would be inadequate under just compensation principles, and which are usually payable only in limited types of cases.

> *United States v. Dillon*, 346 F.2d 633, 635 (9th Cir.1965), *cert. denied,* 382 U.S. 978, . . . (1966); *see Peterson v. Nadler,* 452 F.2d 754, 758 (8th Cir. 1971). This duty of public service is a condition of practicing law, and constitutes neither a taking under the fifth amendment, *id.* at 635-36; *accord Dolan v. United States,* 351 F.2d 671, 672 (5th Cir.1965); *see also Hurtado v. United States*, 410 U.S. 578, 588-89, . . . (1973) (citing, *inter alia*, *Dillon*), nor involuntary servitude under the thirteenth amendment, *see White v. United States Pipe & Foundry Co.,* 646 F.2d 203, 205 n.3 (5th Cir. 1981).

795 F.2d at 800-01. The opinion may not expressly say that state regulation of attorneys is subject to the regulatory takings test and not a *per se* test, but no other conclusion is possible.

Moreover, as noted in *30.64 Acres of Land*, the position is consistent with, if not compelled by, the Supreme Court's opinion in *Hurtado v. United States*, 410 U.S. 578, 588-89 (1973). There the Supreme Court cited *Dillon* in support of the position that "the Fifth Amendment does not require that the Government pay for the performance of a public duty it is already owed."[7]

---

[7]*Dillon* has been cited approvingly by a number of other circuits. *See United States v. Accetturo*, 842 F.2d 1408, 1413 (3rd Cir. 1988) (affirming that district court had power to require counsel to undertake representation of criminal defendant in the middle of trial)*; Family Div. Trial Lawyers v. Moultrie*, 725 F.2d 695, 706 (D.C. Cir. 1984) ("While we agree with the district court that some *pro bono* requirements do not constitute a 'taking,' we think it equally clear that an unreasonable amount of required uncompensated service might so qualify."); *Williamson v. Vanderman*, 674 F.2d 1211, 1215 (8th Cir. 1982) (affirming appointment of counsel to represent criminal defendant without compensation, but reversing order that the attorney bear the necessary costs of criminal defense work).

Scheehle seeks to distinguish cases such as *Dillon* on the grounds that they concern the ancient and established tradition of attorneys being obligated to serve indigents on court order. This argument fails to recognize the breadth of our rulings,[8] and more importantly, confuses the authority of a court to compel an attorney to serve with the attorney's alleged constitutional right to compensation for that service. If a state has no authority to require a service from an attorney, the imposition would presumably be illegal without resort to the Fifth Amendment.[9] As Justice O'Connor noted, the Fifth Amendment presumes that the state has the authority to "take" the property and only regulates when a taking requires compensation. *Lingle*, 544 U.S. at 536-37. Accordingly, whether the *per se* test exception to the generally applicable regulatory takings test applies does not turn on a state's authority to impose the obligation on the attorney.

[6] Rather, the Supreme Court has looked at the impact of the regulation on the "property," not the underlying reason for the regulation. In *Lucas v. South Carolina Coastal Council*, the Supreme Court noted:

> Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with. This accords, we

---

[8]To reiterate, in *Dillon* we relied on *Powell,* which held that a trial court had a duty to appoint counsel, even in the absence of a statute, and that attorneys "are officers of the court, and are bound to render service when required by such an appointment." 287 U.S. at 65. In *30.64 Acres of Land*, we broadly stated "Courts have long recognized that attorneys, because of their profession, owe some duty to the court and to the public to serve without compensation when called on." 795 F.2d at 800.

[9]Scheehle's arguments that the Arizona courts lacked authority to mandate service as an arbitrator were rejected by the Arizona Supreme Court. *Scheehle*, 211 Ariz. at 285.

think, with our "takings" jurisprudence, which has traditionally been guided by the understandings of our citizens regarding the content of, and the State's power over, the "bundle of rights" that they acquire when they obtain title to property. It seems to us that the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers; "[a]s long recognized, some values are enjoyed under an implied limitation and must yield to the police power." *Pennsylvania Coal Co. v. Mahon*, 260 U. S., at 413, 43 S. Ct., at 159. And in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, he ought to be aware of the possibility that new regulation might even render his property economically worthless (at least if the property's only economically productive use is sale or manufacture for sale). *See Andrus v. Allard,* 444 U.S. 51, 66-67, 100 S. Ct. 318, 327, 62 L. Ed. 2d 210 (1979) (prohibition on sale of eagle feathers).

505 U.S. 1003, 1027-28 (1992) (footnotes omitted). Here, both tradition and case law confirm that the benefits conferred by admission to the bar ("the nature of [an attorney's] estate") do not preclude court directed temporary service as an arbitrator: "the proscribed use interests were not part of his title to begin with." *Id.* at 1027. In other words, the "bundle of rights" a person acquires with admission to a bar does not include a right to compensation under the Fifth Amendment for duties that he or she owes to the courts unless the particular duty imposed amounts to a taking under Fifth Amendment pursuant to the regulatory takings test. We note that the cost to an attorney of representing an indigent criminal defendant, which we have held does not necessarily constitute a taking, *30.64 Acres of Land*, 795 F.2d at 801, will usually far exceed the cost of serving as an arbitrator for two days a year.

### III.

**[7]** We conclude that whether the Appointment System's requirement that Scheehle devote up to two days a year to serving as an arbitrator with minimal compensation constitutes a taking under the Fifth Amendment is determined by the application of the regulatory takings test as set forth by the Supreme Court in *Lingle*, 544 U.S. at 536-40, and *Penn Central*, 438 U.S. at 123-28. Applying the regulatory takings test, we determine that the services required of Scheehle by the Appointment System do not amount to a taking of property for which he has a right to compensation under the Fifth Amendment.

The district court's grant of summary judgment for the defendants is **AFFIRMED**.