573 So.2d 800 (1990)
In re AMENDMENTS TO RULES REGULATING THE FLORIDA BAR  1-3.1(a) AND RULES OF JUDICIAL ADMINISTRATION  2.065 (LEGAL AID).
No. 74538.
Supreme Court of Florida.
December 13, 1990.
Rehearing Denied February 13, 1991.
Talbot D'Alemberte of Steel, Hector and Davis, Miami, on behalf of fifty-eight members of The Florida Bar, for petitioner.
James Fox Miller, President, Hollywood, Benjamin H. Hill, III, President-elect, Tampa, James A. Baxter, Chairman of Bd. of *801 Governor's Committee on Access To The Legal System, Clearwater, Jack F. Harkness, Jr., Executive Director, and Mary Ellen Bateman, UPL Counsel, Tallahassee, on behalf of The Florida Bar; Anthony C. Musto, Chairman, Florida Rules of Judicial Administration Committee, of Musto, Zaremba and Rosenthal, Coral Gables, Henry P. Trawick, Jr., Sarasota, Brian C. Sanders, Fort Walton Beach, Joseph W. Little, Gainesville, and Harvey M. Alper, Altamonte Springs, Michael H. Davidson, Fort Lauderdale, and James E. Tribble of Blackwell & Walker, P.A., Miami, on behalf of the Dade County Bar Ass'n, responding.
OVERTON, Justice.
The Court has before it a petition of fifty-eight members[1] of The Florida Bar who seek to have this Court (1) amend the Rules Regulating The Florida Bar to make clear that all members of The Florida Bar have a duty to provide aid to indigents when ordered to do so by a court and (2) adopt a rule of judicial administration that requires each circuit to develop a plan addressing the legal needs of the poor in that community. Various responses in opposition have been filed, and all interested persons have had an opportunity to present their views.
In summary, we find that lawyers have an obligation, when admitted to The Florida Bar, to provide legal services for the poor when appointed by a court. We find that no change to the Rules Regulating The Florida Bar is necessary, and we defer consideration of the proposed judicial administration rules pending receipt of the report of the Florida Bar/Florida Bar Foundation Joint Commission on the Delivery of Legal Services to the Indigent in Florida (hereinafter Joint Access Commission). We request that the Commission's recommendation be filed prior to February 1, 1991.
Petitioners argue that the poor have legal needs and that this Court is responsible for taking the lead in assuring the availability of legal services for the poor. To accomplish this, petitioners propose the following rules:
(1) An amendment to the Rules Regulating The Florida Bar to be entitled rule 1-3.1(a):

Rule 1-3.1(a) Duties. It is the duty of every member of The Florida Bar to provide aid to indigents as and when ordered by the courts, including orders issued pursuant to Rule 2.065 of the Florida Rules of Judicial Administration.
(2) The following new rule of judicial administration:
RULE 2.065. LEGAL ASSISTANCE TO THE POOR.
(a) Statement of Purpose. The purpose of this rule is to establish a procedure by which legal needs of the poor in Florida may be determined and satisfied at the circuit level. This rule implements the rights to justice set forth in 11 Hen. 7, c[h]. 12, as adopted by section 2.01, Florida Statutes, the power of judicial assignment as prescribed by rule 4-6.2 of the Code of Professional Responsibility, and the rights to access to the courts, due process, and equal rights guaranteed by the Constitution of Florida. It provides a procedure for all Florida judges to assign attorneys in appropriate cases.
(b) Duties of Chief Judges.

*802 (1) Requests for Aid. In each circuit, petitions or other such requests for legal services may be given to the chief judge. Requests may come from any interested party, including legal services organizations, the local bar, or individuals.
(2) Responses. In response to such requests, the chief judge may: (i) assign an attorney or attorneys to handle a given request; (ii) delegate to other judges in the circuit responsibility for receiving and effectuating the requests; (iii) appoint a legal needs commission to handle creation of procedures for receiving and acting upon requests; or (iv) create any other procedure for the effective handling of requests for legal aid.
(c) Plan for Meeting Legal Needs.
(1) The Plan. Each plan will include the processes for funding legal services, selecting meritorious cases, appointing counsel, and enforcing the plan.
(2) The Commission. Should the chief judge appoint a legal needs commission, the commission shall have the power to devise and effectuate a plan for meeting the community's legal needs. The commission may include attorneys, judges, and other citizens. The commission shall hear from all interested parties and may receive submissions from lawyers, law firms, and legal service organizations.
(d) Ratification. The procedure and resulting plan chosen by the chief judge will be filed by the chief judge with the Supreme Court of Florida.
(e) Petition to Amend or Revoke Plan. Where conditions are shown to justify an amendment or revocation of the plan, the chief judge shall entertain a petition to amend or revoke using the procedure described in subsection (b)(1).
Petitioners assert that the right to counsel was established by a statute adopted in England in 1495. This statute concerns legal services to the poor and states in part:
That every poor person ... which shall have cause of action ... against any person ... within this realm shall have by the discretion of the Chancellor of this realm ... writ or writs original and writs of subpoena ... therefore nothing paying to your highness for the seals of the same, nor to any person for the writing of the same writ and writs to be hereafter sued; and that the said chancellor ... shall assign such of the clerks which shall do and use the making and writing of the same writs, to write the same ready to be sealed, and also learned Counsel and Attorneys for the same, without any reward taken therefore: And after the said writ or writs be returned ... the Justices there shall assign to the same poor person or persons, counsel learned, by their discretions, which shall give their Counsels, nothing taking for the same: And likewise the Justices shall appoint Attorney ... for the same poor person ... and all other officers requisite and necessary to be had and made, which shall do their duties without any reward for their counsels, help, and business in the same... .
11 Hen. 7, ch. 12 (1495) (reprinted in vol. III, Fla. Stat., pp. 51-52 (1941)).
Petitioners reason that under section 2.01, Florida Statutes (1989), the common law and statutes of England in effect on July 4, 1776, are in force in Florida unless they are inconsistent with the constitution or laws of this state or of the United States. Petitioners note that neither the constitution nor the legislature has repealed this statute and, consequently, this statute is presently in force in Florida.
Petitioners further assert that a right to counsel is a necessity for persons living in today's complex society. They rely on the constitutional rights contained in the Florida Constitution, specifically, access to the courts,[2] equal protection,[3] due process,[4] this Court's authority to adopt rules,[5] and *803 this Court's power over the legal profession.[6]
Petitioners direct this Court's attention to its acknowledgment of its responsibility to assure the availability of legal representation to the poor as contained in our decisions in The Florida Bar v. Furman, 376 So.2d 378 (Fla. 1979), appeal dismissed, 469 U.S. 925, 105 S.Ct. 316, 83 L.Ed.2d 254 (1984), and The Florida Bar: In re Emergency Delivery of Legal Services to the Poor, 432 So.2d 39 (Fla. 1983), as well as in In Interest of D.B., 385 So.2d 83 (Fla. 1980), where we explained the historic obligation of lawyers to represent the poor.
In response, respondents assert that this proposal is no more than mandatory pro bono and that any inherent judicial power that this Court has must be confined to lawyers' courtroom activities and cannot be extended to social welfare. They further assert that the proposed rules violate lawyers' fifth, thirteenth, and fourteenth amendment rights under the federal constitution and their rights under the declaration of rights of the Florida Constitution.[7] Respondents argue that nothing in the Florida Constitution empowers this Court to act in these circumstances and that the United States Supreme Court's decision in Mallard v. United States District Court, 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989), expressly prohibits uncompensated legal services on the basis of a lawyer's traditional professional obligation. Two respondents propose alternative plans that seek legislative assistance and volunteer lawyers to meet the need for legal services for the poor.

Obligation of the Legal Profession of Florida
When an individual is admitted to practice law in Florida, he or she becomes an officer of its courts upon taking an oath expressly adopted by this Court.[8] The oath extensively sets forth the responsibilities and obligations of lawyers in Florida. The last sentence expressly states: "I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any person's cause for lucre or malice." Rules Relating to Ethics Governing Bench and Bar, 145 Fla. 763, 797 (1941) (emphasis added). This provision identifies one of the specific public responsibilities lawyers have as officers of the court.
We recognized the historic obligation of the legal profession to represent the poor in our decision in In Interest of D.B. In that decision we explained the different means by which counsel can be provided where permanent termination of child custody is in issue. We also upheld the authority of the court to appoint counsel and the responsibility of the bar to provide representation. In that case, we noted:
The common law obligation of the profession to represent the poor without compensation has been carried forward in contemporary practice by cases such as United States v. Dillon, 346 F.2d 633 *804 (9th Cir.1965), cert. denied, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966), which endorse the historical concept that one who is allowed the privilege to practice law accepts a professional obligation to defend the poor. Some courts and commentators have expressed the contrary view that requiring court-appointed counsel to serve without compensation constitutes an unfair imposition upon the bar and an unfair "taking" of private property in violation of the due process clause.
It is our view that the government has an obligation to provide legal representation when such appointment is required by the constitution, but lawyers should not be totally relieved of their professional obligation to provide legal services to the poor... .
... .
When appointment of counsel is desirable but not constitutionally required, the judge should use all available legal aid services, and when these services are unavailable, he should request private counsel to provide the necessary services. Under these circumstances, no compensation is available, and the services are part of the lawyer's historical professional responsibility to represent the poor.
385 So.2d at 92 (emphasis added, footnotes omitted).
It is important to explain the historical basis for placing this obligation on lawyers. In our common law adversary system, the lawyer plays the role of an advocate. In the courtroom, lawyers present evidence and examine witnesses to aid the judge and the jury in their search for the truth. In other systems, such as the European continental system, lawyers have a limited role during court proceedings. In that system, the judge questions the witnesses and brings out the evidence. The role of the lawyer in this type of process has been described as passive. D. Rueschemeyer, Lawyers and Their Society (1973).
Lawyers as advocates are essential to our common law adversary system. An adversarial system of justice requires legal representation on both sides in order for it to work properly. Without adversaries, the system would not work. Consequently, the obligation to represent the "defenseless and oppressed" is critical to our judicial system if it is to work properly for all segments of our society.
Respondents argue that the United States Supreme Court decision in Mallard prohibits the mandatory appointment of counsel. We disagree. In that case, the Court was construing 28 U.S.C. § 1915 (d), which provides that federal courts may request an attorney to represent any person filing in forma pauperis. The Court found that the term "request" reflects Congress's intent not to provide for mandatory appointment of counsel. In its opinion, the Court stated:
We emphasize that our decision today is limited to interpreting section 1915(d). We do not mean to question, let alone denigrate, lawyers' ethical obligation to assist those who are too poor to afford counsel, or to suggest that requests made pursuant to section 1915(d) may be lightly declined because they give rise to no ethical claim. On the contrary, in a time when the need for legal services among the poor is growing and public funding for such services has not kept pace, lawyers' ethical obligation to volunteer their time and skills pro bono publico is manifest. Nor do we express an opinion on the question whether the federal courts possess inherent authority to require lawyers to serve.

Mallard, 109 S.Ct. at 1822-23 (emphasis added). The Mallard decision was based solely on congressional intent in enacting a federal statute. It is important to note that in Barnard v. Thorstenn, 489 U.S. 546, 109 S.Ct. 1294, 103 L.Ed.2d 559 (1989), decided during the same term as Mallard, the United States Supreme Court reaffirmed its position that a state may require lawyers, as a condition of practicing law, to represent the poor when directed to do so by a court. We agree we have that authority.[9]
*805 We also reject respondents' claim that the thirteenth amendment,[10] which prohibits involuntary servitude, necessarily prohibits a court from appointing a lawyer without his consent. For the condition of servitude to be within the thirteenth amendment's prohibition, the person must be subjected to physical restraint or threat of legal confinement as an alternative to the service. We find that the amendment does not apply if the individual may choose freedom even though the consequences of that choice result in some diminution of economic earning power. This principle was reaffirmed by the United States Supreme Court in Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972). In that decision, the Court upheld baseball's famed reserve clause and rejected a thirteenth amendment attack because Flood was unable to show compulsory service. The fact that an individual such as Flood would suffer substantial economic loss is not sufficient to bring the cause within the thirteenth amendment. See Shapiro, The Enigma of the Lawyer's Duty to Serve, 55 N.Y.U.L.Rev. 735, 770 (1980). While confinement for failure to comply with an order directing representation of an indigent might bring the issue under the thirteenth amendment, other appropriate sanctions, such as a fine, suspension, or disbarment, could be imposed without violating the thirteenth amendment. Numerous decisions have rejected similar thirteenth amendment claims concerning attorney appointments.[11] We agree with the majority view expressed in these opinions.
We also reject respondents' fifth amendment claim that there is a "taking" when the court requires a lawyer to represent an indigent without compensation. The majority of jurisdictions that have addressed the issue agree that uncompensated representation of indigents under court order is an obligation that lawyers accept as a condition of their license to practice and a part of their public responsibility as officers of the court. We agree with that view and hold that this obligation, consented to and assumed when an individual becomes a lawyer, is an absolute defense to the contention that there is a fifth amendment "taking." United States v. Dillon, 346 F.2d 633 (9th Cir.1965), cert. denied, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966).[12]
While we find no constitutional violation, we do conclude that a lawyer may challenge a court appointment on the grounds of abuse of discretion, such as where a court takes a substantial portion of the lawyer's available services for such appointments. An appropriate means of avoiding appointments is set forth in rule *806 4-6.2, Rules Regulating The Florida Bar.[13] We note that the grounds contained in the rule are not intended to set forth all circumstances that would justify "good cause" to avoid court-ordered appointments.
We hold that every lawyer of this state who is a member of The Florida Bar has an obligation to represent the poor when called upon by the courts and that each lawyer has agreed to that commitment when admitted to practice law in this state. Pro bono is a part of a lawyer's public responsibility as an officer of the court. At this time we find no need to further express an attorney's obligation as an officer of the court in the rules regulating the Bar.

Plan for Representation of the Indigent
We do not decide at this time whether to adopt a mandatory pro bono program.[14] We agree in principle that providing legal services for the poor is a community function which will vary from community to community based upon the needs and resources available. The objective is to make sure that these needs for legal services are met. We also agree that the chief judge of each circuit may well play a leading role in developing such a plan. At this time, we do not know how mandatory interest on trust accounts,[15] implemented on April 1, 1989, will impact the present needs to provide representation for the poor in civil cases in this state. Hopefully, the increase in funds from this source will provide major assistance for those needs. Given the recent establishment of the Joint Access Commission, we agree with the Bar that a final decision in this matter should not be made until we have had an opportunity to consider the commission's recommendations.
The poor's access to the legal system is an important factor that the commission will address. In order for this justice system to maintain credibility, we realize that it must be available and affordable to all segments of society. Availability, not only for the poor, but also for those with limited funds, is another problem that merits the commission's consideration. This Court and The Florida Bar have regularly adopted programs to improve the accessibility of our judicial system. These include simplified proceedings in small claims court, probate, and dissolution of marriage matters; the development of simplified forms for a litigant's pro se use; the establishment of citizen dispute settlement centers; and the recent implementation of mediation and arbitration programs designed to resolve disputes in an efficient and economical manner. This Court has repeatedly recognized its responsibility to assure access to the courts. We await the commission's recommendation before addressing petitioners' suggestions on how to best meet the needs of the poor. We request that the commission file its report by February 1, 1991.
In conclusion, Thomas Jefferson once said: "There is a debt of service due from every man to his country proportioned to the bounties which nature and fortune have measured to him."[16] The lawyers of this state have recognized that they have a debt of service to the poor in the oath each took upon becoming a member of the legal profession and an officer of the courts. This *807 important commitment assures a justice system for all. We acknowledge our responsibility to provide the necessary leadership to accomplish that goal.
It is so ordered.
SHAW, C.J., and McDONALD, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] William H. Abbuehl, Jacqueline Allee, W. George Allen, Catherine A. Altman, Martha W. Barnett, Kimberly E. Brautigam, Randall C. Berg, W. Peter Burns, Dominic M. Caparello, Marshall R. Cassedy, Neil Chonin, Julian Clarkson, LeRoy Collins, Doreen Cook-Wesley, Marcia K. Cypen, Talbot D'Alemberte, Paul C. Doyle, C. James Dulfer, Arthur J. England, Jr., Sheila Essig, Matthew P. Farmer, Donald A. Gifford, Steven Goldstein, Robert H. Graddy, Mark K. Haydu, Treena A. Kaye, Judith E. Koons, Ira J. Kurzban, Rose Levering, David Lillesand, Robert E. Livingston, Hugh MacMillan, Jr., Scott T. Manion, Donald M. Middlebrooks, Chandler R. Muller, Travis M. Murphy, Cyra C. O'Daniel, Roderick N. Petrey, Robert J. Pleus, Jr., F. Wallace Pope, Jr., Mary Delaney Raspet, James C. Rinaman, Jr., James M. Russ, Frank Scruggs, Steven L. Seliger, Samuel E. Sharper, Jr., William J. Sheppard, Glenn A. Shuman, Chesterfield Smith, John E. Smith, Samuel S. Smith, Wm. Reece Smith, Jr., Kent R. Spuhler, Alan C. Sundberg, Parker D. Thomson, Steven J. Uhlfelder, Sylvia H. Walbolt, and Elizabeth L. White.
[2] Art. I, § 21, Fla. Const.
[3] Art. I, § 2, Fla. Const.
[4] Art. I, § 9, Fla. Const.
[5] Art. V, § 2, Fla. Const.
[6] Art. V, § 15, Fla. Const.
[7] Art. I, §§ 1-23, Fla. Const.
[8] The oath states:

I do solemnly swear:
I will support the Constitution of the United States and the Constitution of the State of Florida.
I will maintain the respect due to Courts of Justice and judicial officers;
I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land;
I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the Judge or jury by any artifice or false statement of fact or law;
I will maintain the confidence and preserve inviolate the secrets of my client, and will accept no compensation in connection with his business except from him or with his knowledge and approval;
I will abstain from all offensive personalities and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;
I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice. So Help Me God.
Rules Relating to Ethics Governing Bench and Bar, 145 Fla. 763, 797-98 (1941), amended for gender neutral language in Supreme Court Minutes, 1985.
[9] Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); United States v. Accetturo, 842 F.2d 1408 (3d Cir.1988); Bradshaw v. United States District Court, 742 F.2d 515 (9th Cir.1984); Williamson v. Vardeman, 674 F.2d 1211 (8th Cir.1982); Tyler v. Lark, 472 F.2d 1077 (8th Cir.), cert. denied, 414 U.S. 864, 94 S.Ct. 114, 38 L.Ed.2d 84 (1973); United States v. Dillon, 346 F.2d 633 (9th Cir.1965), cert. denied, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966); Dolan v. United States, 351 F.2d 671 (5th Cir.1965). At the state level, eight states seem firmly committed: Arkansas  see Arkansas County v. Freeman, 31 Ark. 266 (1876); Delaware  see Lindh v. O'Hara, 325 A.2d 84 (Del. 1974); Louisiana  see State v. Clifton, 247 La. 495, 172 So.2d 657 (1965); State v. Simmons, 43 La. Ann. 991, 10 So. 382 (1891); Montana  see Johnston v. Lewis & Clarke County, 2 Mont. 159 (1874); North Carolina  see State v. Davis, 270 N.C. 1, 153 S.E.2d 749, cert. denied, 389 U.S. 828, 88 S.Ct. 87, 19 L.Ed.2d 84 (1967); Pennsylvania  see Wayne County v. Waller, 90 Pa. 99 (1879); Tennessee  see House v. Whitis, 64 Tenn. 690 (1875); Virginia  see Barnes v. Commonwealth, 92 Va. 794, 23 S.E. 784 (1895).
[10] U.S. Const. amend. XIII: "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."
[11] United States v. 30.64 Acres of Land, 795 F.2d 796 (9th Cir.1986); Family Division of Trial Lawyers v. Moultrie, 725 F.2d 695 (D.C. Cir.1984); Williamson v. Vardeman, 674 F.2d 1211 (8th Cir.1982); White v. United States Pipe & Foundry Co., 646 F.2d 203 (5th Cir.1981); Sparks v. Parker, 368 So.2d 528 (Ala.), appeal dismissed, 444 U.S. 803, 100 S.Ct. 22, 62 L.Ed.2d 16 (1979); State ex rel. Stephan v. Smith, 242 Kan. 336, 747 P.2d 816 (1987). Contra Bedford v. Salt Lake County, 22 Utah 2d 12, 447 P.2d 193 (1968).
[12] See also Kunhardt & Co. v. United States, 266 U.S. 537, 45 S.Ct. 158, 69 L.Ed. 428 (1925); Wright v. State, 362 F.2d 95 (5th Cir.1966); Dolan v. United States, 351 F.2d 671 (5th Cir.1965).
[13] Rule 4-6.2 provides:

A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:
(a) Representing the client is likely to result in violation of the Rules of Professional Conduct or law;
(b) Representing the client is likely to result in an unreasonable financial burden on the lawyer; or
(c) The client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client.
[14] See Shapiro, The Enigma of the Lawyer's Duty to Serve, 55 N.Y.U.L.Rev. 735 (1980), for a discussion of philosophical objections to and practical administrative problems of mandatory pro bono.
[15] See Matter of Interest on Trust Accounts: A Petition to Amend the Rules Regulating The Florida Bar, 538 So.2d 448 (Fla. 1989).
[16] Letter from Thomas Jefferson to Edward Rutledge (Dec. 1796), reprinted in 1 J.P. Foley, The Jeffersonian Cyclopedia 268 (2d ed. 1967).