630 So.2d 501 (1993)
AMENDMENTS TO RULES REGULATING THE FLORIDA BAR  1-3.1(a) AND RULES OF JUDICIAL ADMINISTRATION  2.065 (LEGAL AID).
No. 74538.
Supreme Court of Florida.
June 23, 1993.
As Clarified on Denial of Rehearing February 3, 1994.
Talbot D'Alemberte and Randall C. Berg, Jr. of Steel, Hector & Davis, Miami, for petitioner.
Alan T. Dimond, President, Patricia A. Seitz, President-elect, The Florida Bar, Miami, John F. Harkness, Jr., Executive Director, The Florida Bar, James A. Baxter, Clearwater, Mary Ellen Bateman, UPL Counsel, The Florida Bar, Tallahassee, Alan R. Schwartz, Chief Judge, Third District Court of Appeal, Miami, Joseph W. Little, Gainesville, Harvey M. Alper, Altamonte Springs, Michael H. Davidson, Tallahassee, and J. Marion Moorman, Public Defender, Polk County Courthouse, Bartow, responding.
William A. VanNortwick, Jr., Chair, Jacksonville, and Paul C. Doyle, Staff Director, Orlando, on behalf of the Report of The Florida Bar/Florida Bar Foundation Joint *502 Com'n on the Delivery of Legal Services to the Indigent in Florida.
OVERTON, Justice.
This cause is before the Court to review proposed pro bono rules prepared by The Florida Bar/Florida Bar Foundation Joint Commission on the Delivery of Legal Services to the Indigent in Florida. These proposed rules were prepared solely to address the legal needs of the poor in Florida pursuant to this Court's direction in In re Amendments to Rules Regulating the Florida Bar, 598 So.2d 41 (Fla. 1992). By this opinion, we adopt the rules as modified herein and as set forth in the attached appendix.
In adopting these rules, we emphasize that they are aspirational rather than mandatory. The rules establish specific goals to assist each lawyer in Florida in fulfilling the commitment a lawyer makes upon taking the oath to become an officer of the court: "I will never reject from any consideration personal to myself the cause of the defenseless or oppressed." Although all licensed lawyers in Florida take this oath, some respondents still argue that this Court has no authority to establish pro bono guidelines. Moreover, they claim that the rules are mandatory rather than aspirational and amount to nothing more than a social program for the general welfare of the public. On the other hand, some respondents assert that the proposed rules do not go far enough, arguing that the rules should be mandatory rather than aspirational and claiming that the implementation of mandatory pro bono is the only way to ensure that legal services will be provided to the poor.
The authority and responsibility of this Court to adopt rules on the issue of pro bono legal services to the poor under our constitutional rule-making and administrative authority has been fully addressed in prior opinions.[1] We need not readdress that issue here. We do reiterate, however, that this Court, as the administrative head of the judicial branch, has the responsibility to ensure that access to the courts is provided for all segments of our society. Given the number of reports presented to this Court that document the legal needs of the poor,[2] we find it necessary to implement the attached rules. Justice is not truly justice if only the rich can afford counsel and gain access to the courts. Consequently, these rules are being implemented in the hopes that they will act as a motivating force for the provision of legal services to the poor by the members of this state's legal profession.
We realize, however, that the rules we adopt in today's opinion will not be the prime motivating force in making the legal system work through the provision of pro bono services  only lawyers themselves can do that. Nevertheless, by implementing the aspirational standards set forth by the rules in the appendix to this opinion, we hope that the lawyers of this state, as officers of our courts, will recognize the clear legal needs of the indigent in this state and will act to provide the necessary services. We do not believe that mandatory pro bono is necessary to fulfill that goal. As such, the rules are aspirational rather than mandatory, and the failure to meet the aspirational standards set forth in the rules will not constitute an offense subject to discipline.
On the other hand, we do expect members of the Bar, through the simplified report form that will be made a part of the annual dues statement, to report how they have assisted in addressing the legal needs of the poor. We believe that accurate reporting is essential for evaluating this program and for determining what services are being provided *503 under the program. This, in turn, will allow us to determine the areas in which the legal needs of the poor are or are not being met. Because we find that reporting is essential, failure to report will constitute an offense subject to discipline.
Further, we do not believe that the hourly pro bono service recommendation in the rules constitutes an unreachable aspiration for a lawyer in today's society. The rules recommend a minimum of twenty hours service per year for each member of the Bar. The American Bar Association, at its February 1993 meeting, adopted a suggested standard of fifty hours service per year. A.B.A. Model Rules of Professional Conduct Rule 6.1 (1993) ("A lawyer should aspire to render at least (50) hours of pro bono publico legal services per year.") The American Bar Association's suggested service standard is significantly greater than the twenty-hour goal we adopt through this opinion. We note that some law firms today set a goal for their partners and associates of 1800 to 2100 billable hours per year. By those standards, the suggested goal of twenty hours per year in these rules is minimal.
While we approve the substance of the proposed rules, we find that certain modifications are necessary to address a number of issues raised in this proceeding. To that end, we address the following six issues: (1) the definition of "legal services to the poor"; (2) the responsibility of judicial officers and governmental employees under the proposed rules; (3) collective satisfaction; (4) simplified reporting requirements; (5) the responsibility of out-of-state lawyers; and (6) coordination and development of local plans.

Definition of "Legal Services to the Poor"
The entire focus of this action has been to address the legal needs of the poor. That objective is distinguishable from other types of uncompensated public service activities of the legal profession. Clearly, this Court has the constitutional responsibility to ensure access to the justice system. Although other public service by the legal profession is important, no authority exists for this Court to address, through the Rules Regulating The Florida Bar, uncompensated public service activities not directly related to services for the courts and the legal needs of the poor. As such, we find that the proposed rules should be modified to eliminate any reference to services not related to the legal needs of the poor. Additionally, we find that the rules should clearly indicate that their purpose is to establish aspirational goals and to motivate the legal profession to provide necessary legal services to the poor. To accomplish these purposes, we find that the definition of legal services to the poor should be narrow, expressing simply that Florida lawyers should strive to render (1) pro bono legal services to the poor or (2) to the extent possible, other pro bono service activities that directly relate to the legal needs of the poor. It is also our intention that the definition include legal services not only to indigent individuals but also to the "working poor." The rules have been modified accordingly.

Judicial Officers and Government Employees
The responsibility of judicial officers and government employees in providing legal services to the poor presents a unique dilemma. Judicial officers and their staffs are expressly prohibited from practicing law, specifically: (a) article V, section 13, of the Florida Constitution (judge shall devote full time to judicial duties and shall not engage in the practice of law); (b) Code of Judicial Conduct, Canon 5B(1) (judge should not serve in civic or charitable organization if it is likely the organization will be engaged in proceedings that may come before the judge or will be regularly engaged in adversary proceedings in any court); (c) Canon 5D (judge should not serve in fiduciary capacity); (d) Canon 5F (judge should not practice law); and (e) Rule of Judicial Administration 2.060(c) (same limitations apply to judicial clerks).
These prohibitions are designed partially to prevent judges and their staffs from taking time away from their judicial duties. More importantly, however, the prohibitions are to prevent them from placing themselves in positions where their actions could directly or indirectly be influenced by matters that could come before them or could provide the appearance that certain parties might be favored *504 over others. As a result, members of the judiciary and their law clerks are unable to participate in providing pro bono legal services to the poor absent a broadening of the definition of those services to such an extent that the services would no longer be limited to legal services. As discussed above under the definition of legal services, we believe that a narrow definition of pro bono services is necessary to ensure that the purposes behind the implementation of these rules are in accordance with our authority. Consequently, we find that members of the judiciary and their staffs should be deferred at this time from participating in the program.
We emphasize, however, that judges and their staffs may still teach or engage in activities that concern non-adversarial aspects of the law. Canon 4. Although those activities would not be governed by these rules, we strongly encourage the participation of the judiciary in those activities and request the judicial conferences to consider appropriate means to provide support and allow participation of judges and law clerks in pro bono activities.[3]
As with the judiciary, there are also specific rules or regulations that prohibit many government lawyers from practicing law other than in the performance of their constitutional or statutory functions. For example, sections 27.015 and 27.51(3), Florida Statutes (1991), place such a restriction on state attorneys and public defenders, respectively. Members of the military are also similarly restricted.
The Government Lawyer Section of the Florida Bar, in a commendable effort, attempted to address the difficult issue of government lawyers' contributing pro bono services. That section noted the problems faced by government lawyers. Those problems included not only restrictions on the practice of law, but also, even when not so restricted, the limited availability of staff and lack of malpractice insurance. However, rather than arguing for a total exemption, the section expressed the view that some ways could be developed to allow government lawyers to provide legal services to the poor despite these problems. For instance, it noted that certain government offices have developed pro bono programs through which lawyers in those offices could engage in providing pro bono services in limited areas.
As with the judiciary, we strongly encourage the development of these types of programs. However, based on the prohibitions under which many government lawyers operate, we hold that government lawyers who are prohibited by statute, rule, or other regulation from participating in the provision of legal services to the poor are also deferred at this time from participating in this program.

Collective Discharge of a Lawyer's Pro Bono Responsibility
The proposed rules significantly restrict the collective discharge of a lawyer's responsibility to provide legal services to the poor but does allow such collective discharge in very limited circumstances. As we read the rule, it encourages lawyers to personally provide this service so that each lawyer may experience this responsibility firsthand and, consequently, better understand the needs that must be served. Nevertheless, the rules recognize that some types of cases, such as death penalty representations, must be given collective credit in view of the substantial time, effort, and expense that is usually involved. To not allow such collective credit would actually act as a deterrent to obtaining counsel in such cases where legal representation is essential. As such, we approve the collective-discharge provisions as written. We also believe that approval of the collective discharge provisions should encourage large law offices to fund full-time public service staffs. This, in turn, will assist in making available an increased amount of public pro bono legal services, particularly in cases *505 that require substantial time and support commitments.

Reporting Requirements
As previously indicated, in order to evaluate the effectiveness of pro bono services, a simplified reporting scheme is necessary. Some responses we have received argue that a reporting requirement makes this program mandatory rather than aspirational. We reject that contention. Granted, some peer pressure may exist as a result of the reporting requirement. However, given that the reporting requirement is the only true way to evaluate how the legal needs of the poor are being met, we find that the merits of the reporting requirement greatly outweigh any perceived pressure to participate. Indeed, if peer pressure motivates lawyers to participate, we find that such pressure may be beneficial in this instance.
To facilitate adequate reporting, we have modified the proposed rules to include a simplified reporting statement. That statement will be sent to all members of the Bar with their dues statement and will include five alternative categories from which each member will choose. In addition to categories for individual pro bono services, collective satisfaction, and monetary contributions, the statement will include a category that allows members to indicate that they are deferred from participating in the program at this time because, as members of the judiciary or their staffs or as government employees, they are prohibited by statute, rule, or regulation from engaging in the provision of services under the plan. We note that not all government lawyers will be deferred from meeting the aspirational goals of the program. Only those government lawyers who are prohibited by statute, rule, or regulation from engaging in the provision of pro bono legal services outside the scope of their employment will be deferred under this category. Additionally, an alternative category will be included to allow members to indicate that they have fulfilled their services in some special manner not specifically envisioned by the plan. For example, we acknowledge that some lawyers, because of the nature of their practice, regularly serve indigents for a limited amount of compensation. Under this alternative, those lawyers can appropriately report this service as discharging their pro bono responsibility.

Out-of-State Members
A significant number of lawyers licensed to practice law in Florida reside and practice outside of this state. Even so, we find that they should not be excluded from their responsibility to provide legal services to the poor. We hold, however, that such services or, alternatively, financial contributions may be made in the states in which they practice or reside. The proposed rules have been modified accordingly.

Development of Local Programs
Finally, we address the development of local pro bono legal services plans. As written, the chief judge of each circuit or the chief judge's designee shall oversee the development of these local plans. It has been suggested that the chief judges should not be directly involved in developing local community plans. We disagree. Members of the judiciary, and chief judges in particular, have a broad knowledge of what is needed in the various jurisdictions of their courts. We recognize that the chief judge has substantial administrative responsibilities, but we find that the multiplicity of bar associations and legal service organizations within communities creates the need for chief judges, or the chief judges' designees, to oversee the coordination of these activities. Moreover, we do not believe that the chief judges' participation will create a conflict with any lawyer who practices before them simply because that lawyer chooses not to participate in the program. At this time, we conclude that the chief judge, or the chief judge's designee, is the appropriate person to coordinate the initial development of a workable pro bono plan.
In conclusion, while we have not changed the substance of the proposed rules, we have significantly modified and altered the rules to address issues contained in both written and oral responses presented to this Court. For the reasons expressed, we approve the rules as modified in the attached appendix, and we direct that they shall become effective October 1, 1993.
It is so ordered.
*506 SHAW, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., and McDONALD, J., concur specially with opinions.
KOGAN, J., concurs in part and dissents in part with an opinion.
BARKETT, Chief Justice, specially concurring.
As expressed in the majority opinion and in this Court's prior opinions, I certainly agree that lawyers have a responsibility to help assure meaningful access to the courts for all of our citizens. See In re Amendments to Rules Regulating The Florida Bar  1-3.1(a) and Rules of Judicial Administration  2.065 (Legal Aid), 598 So.2d 41 (Fla. 1992); In re Amendments to Rules Regulating The Florida Bar  1-3.1(a) and Rules of Judicial Administration  2.065 (Legal Aid), 573 So.2d 800 (Fla. 1990). I also have noted previously that pro bono work enables lawyers to understand the problems besetting the vast majority of our citizens in a way that simply reading about them does not. 598 So.2d at 55 n. 6. (Barkett, J., concurring in part, dissenting in part). It is only when the more influential members of our society truly understand the legal problems of most Floridians that meaningful solutions will be sought and found to assure access to the courts, without which there never will be equal justice.
Accordingly, I agree with much of the majority's opinion. I write separately, however, to make some additional observations about some of the provisions in the new rules.
First, like some other members of the Court, I am troubled by the $350 buy-out provision. I am not comfortable with providing such an easy incentive to avoid the more significant, necessary, and direct help that is essential if the impact is to be real. Moreover, there is an inherent inequity when those who cannot afford to pay are asked to provide twenty hours of work, and those with money can "buy out" for the value of a few hours.
Second, I agree with the majority's decision deferring, rather than excusing, judges, their staffs, and government lawyers from pro bono obligations until appropriate rules are developed.
As the Court recognizes, there are many things that judges and their staffs can do to advance the principles of pro bono service. I am confident that discussion of this issue by the judicial conferences will reveal many activities that would not run afoul of ethical considerations. It may be true that judges and law clerks would only be subject to modified and restricted pro bono service, but that should not preclude the effort to explore what the parameters of that service should be.
As with judicial officers and their staffs, the majority recognizes that government lawyers can perform public services for the poor, but that the parameters of rules enabling them to do so require refinement. I anticipate that the Government Lawyer Section of the Bar will propose rules that would accommodate any necessary ethical and legal restrictions and find a means of permitting all government lawyers to participate in pro bono work.
Many government lawyers already have found ways to provide such services. In Broward County, for example, the county attorney's office initiated a pro bono program in cooperation with Broward Lawyers Care[4] that permits its lawyers to provide a variety of services to the poor. During creation of the program, the county attorney's office anticipated and resolved a number of potential problems in the areas of malpractice insurance, trust accounts, conflicts of interest, office space, and stationery.
Government lawyers in other states also have found ways to provide pro bono services. In Minnesota, for example, assistant attorneys general work after hours in a telephone advice project, providing information on consumer law and housing issues. In Washington state, government attorneys regularly accept family law cases involving indigent clients. Marla Elliott, Government Attorneys *507 Provide Pro Bono Service in Washington State, Activation Exchange, September, 1984, at 8-9 ("Although there are obstacles to their participation, the support services we have developed to help overcome those obstacles seem to be adequate and are working well.").
Finally, we cannot forget that access to the courts is, in the final analysis, the responsibility of the State. No amount of pro bono service by lawyers will ever meet the existing need. I must confess to the nagging worry that a recognition of lawyers' pro bono responsibilities may obfuscate the fact that our democracy and system of justice is predicated on the ability of all citizens to access the courts. Art. I, § 21, Fla. Const. As noted in a recent newspaper article, basic legal aid must be viewed as every citizen's right and not as an act of charity. Jack Wax, Pro Bono's Not Enough for the Job, Nat'l L.J., May 10, 1993, at 13. At the very least, lawyers must bring the overwhelming need for legal services to the attention of legislative bodies and do everything possible to see that the need is met.
McDONALD, Justice, specially concurring.
At the outset, I reiterate my view that no further rule making in the area of pro bono legal services is warranted or necessary. I believe this court is unreasonably and unnecessarily trespassing upon both the independence and individual consciences of the members of The Florida Bar. I have lost this point, however, and this Court has authorized and directed further rules in this area.
Everyone concerned is endeavoring to constitutionally make available legal services to all in need of them. The proposed rule changes, recognizing that the responsibility for this task rests on society generally, describe what a minimal contribution by attorneys is appropriate to be consistent with their ethical obligations. As an aspirational guideline, I have no quarrel with the exception that the paltry contribution of $350 should substitute for twenty hours of work. This alternative should be at least $1,000, which would relate to $50 per hour, a figure few lawyers accept as an hourly rate today. While I prefer no amendment, the ones approved by the majority are not unreasonable if we insist on this course.
Accordingly, I concur.
KOGAN, Justice, concurring in part, dissenting in part.
I continue to adhere to my earlier views regarding the pro bono obligations of Florida attorneys. See In re Amendments to Rules Regulating The Florida Bar, 598 So.2d 41, 55-60 (Fla. 1992) (Kogan, J., concurring in part, dissenting in part). With regard to the present case, I concur in the majority opinion with the exception of the $350.00 "buy-out" provision. I find it ethically repugnant to suggest that an obligation inhering in each attorney personally can be discharged merely by a contribution of money. Under this provision, financially able attorneys can buy their way clear of the aspirational duty to help the poor, while less financially able attorneys who take their ethical obligations seriously will be constrained to donate services. Both should be treated equally.

APPENDIX

4-6. PUBLIC SERVICE
[The present rule 4-6.1 is deleted in its entirety and is replaced with the following rule.]

RULE 4-6.1 PRO BONO PUBLIC SERVICE
(a) Professional Responsibility. Each member of The Florida Bar in good standing, as part of that member's professional responsibility, should (1) render pro bono legal services to the poor and (2) participate, to the extent possible, in other pro bono service activities that directly relate to the legal needs of the poor. This professional responsibility does not apply to members of the judiciary or their staffs or to government lawyers who are prohibited from performing legal services by constitutional, statutory, rule, or regulatory prohibitions. Neither does this professional responsibility apply to those members of the bar who are retired, inactive, or suspended, or who have been *508 placed on the inactive list for incapacity not related to discipline.
(b) Discharge of the Professional Responsibility to Provide Pro Bono Legal Service to the Poor. The professional responsibility to provide pro bono legal services as established under this rule is aspirational rather than mandatory in nature. The failure to fulfill one's professional responsibility under this rule will not subject a lawyer to discipline. The professional responsibility to provide pro bono legal service to the poor may be discharged by:
(1) annually providing at least 20 hours of pro bono legal service to the poor; or
(2) making an annual contribution of at least $350 to a legal aid organization.
(c) Collective Discharge of the Professional Responsibility to Provide Pro Bono Legal Service to the Poor. Each member of the bar should strive to individually satisfy the member's professional responsibility to provide pro bono legal service to the poor. Collective satisfaction of this professional responsibility is permitted by law firms only under a collective satisfaction plan that has been filed previously with the circuit pro bono committee and only when providing pro bono legal service to the poor:
(1) in a major case or matter involving a substantial expenditure of time and resources; or
(2) through a full-time community or public service staff; or
(3) in any other manner that has been approved by the circuit pro bono committee in the circuit in which the firm practices.
(d) Reporting Requirement. Each member of the bar shall annually report whether the member has satisfied the member's professional responsibility to provide pro bono legal services to the poor. Each member shall report this information through a simplified reporting form that is made a part of the member's annual dues statement. The form will contain the following categories from which each member will be allowed to choose in reporting whether the member has provided pro bono legal services to the poor:
(1) I have personally provided ____ hours of pro bono legal services;
(2) I have provided pro bono legal services collectively by: (indicate type of case and manner in which service was provided);
(3) I have contributed $ ______ to: (indicate organization to which funds were provided);
(4) I have provided legal services to the poor in the following special manner: (indicate manner in which services were provided); or
(5) I have been unable to provide pro bono legal services to the poor this year; or
(6) I am deferred from the provision of pro bono legal services to the poor because I am: (indicate whether lawyer is: a member of the judiciary or judicial staff; a government lawyer prohibited by statute, rule, or regulation from providing services; retired, or inactive).
The failure to report this information shall constitute a disciplinary offense under these rules.
(e) Credit Toward Professional Responsibility in Future Years. In the event that more than 20 hours of pro bono legal service to the poor are provided and reported in any 1 year, the hours in excess of 20 hours may be carried forward and reported as such for up to 2 succeeding years for the purpose of determining whether a lawyer has fulfilled the professional responsibility to provide pro bono legal service to the poor in those succeeding years.
(f) Out-of-State Members of the Bar. Out-of-state members of the bar may fulfill their professional responsibility in the states in which they practice or reside.

Comment
Pro bono legal service to the poor is an integral and particular part of a lawyer's pro bono public service responsibility. As our society has become one in which rights and responsibilities are increasingly defined in legal terms, access to legal services has become of critical importance. This is true for all people, be they rich, poor, or of moderate means. However, because the legal problems of the poor often involve areas of basic need, their inability to obtain legal services *509 can have dire consequences. The vast unmet legal needs of the poor in Florida have been recognized by the Supreme Court of Florida and by several studies undertaken in Florida over the past two decades. The Supreme Court of Florida has further recognized the necessity of finding a solution to the problem of providing the poor greater access to legal service and the unique role of lawyers in our adversarial system of representing and defending persons against the actions and conduct of governmental entities, individuals, and nongovernmental entities. As an officer of the court, each member of The Florida Bar in good standing has a professional responsibility to provide pro bono legal service to the poor. Certain lawyers, however, are prohibited from performing legal services by constitutional, statutory, rule, or other regulatory prohibitions. Consequently, members of the judiciary and their staffs, government lawyers who are prohibited from performing legal services by constitutional, statutory, rule, or regulatory prohibitions, members of the bar who are retired, inactive, or suspended, or who have been placed on the inactive list for incapacity not related to discipline are deferred from participation in this program.
In discharging the professional responsibility to provide pro bono legal service to the poor, each lawyer should furnish a minimum of twenty hours of pro bono legal service to the poor annually or contribute $350 to a legal aid organization. "Pro bono legal service" means legal service rendered without charge or expectation of a fee for the lawyer at the time the service commences. Legal services written off as bad debts do not qualify as pro bono service. Most pro bono service should involve civil proceedings given that government must provide indigent representation in most criminal matters. Pro bono legal service to the poor is to be provided not only to those persons whose household incomes are below the federal poverty standard but also to those persons frequently referred to as the "working poor." Lawyers providing pro bono legal service on their own need not undertake an investigation to determine client eligibility. Rather, a good faith determination by the lawyer of client eligibility is sufficient. Pro bono legal service to the poor need not be provided only through legal services to individuals; it can also be provided through legal services to charitable, religious, or educational organizations whose overall mission and activities are designed predominantly to address the needs of the poor. For example, legal service to organizations such as a church, civic, or community service organizations relating to a project seeking to address the problems of the poor would qualify.
While the personal involvement of each lawyer in the provision of pro bono legal service to the poor is generally preferable, such personal involvement may not always be possible or produce the ultimate desired result, that is, a significant maximum increase in the quantity and quality of legal service provided to the poor. The annual contribution alternative recognizes a lawyer's professional responsibility to provide financial assistance to increase and improve the delivery of legal service to the poor when a lawyer cannot or decides not to provide legal service to the poor through the contribution of time. Also, there is no prohibition against a lawyer's contributing a combination of hours and financial support. The limited provision allowing for collective satisfaction of the twenty-hour standard recognizes the importance of encouraging law firms to undertake the pro bono legal representation of the poor in substantial, complex matters requiring significant expenditures of law firm resources and time and costs, such as class actions and postconviction death penalty appeal cases, and through the establishment of full-time community or public service staffs. When a law firm uses collective satisfaction, the total hours of legal services provided in such substantial, complex matters or through a full-time community or public service staff should be credited among the firm's lawyers in a fair and reasonable manner as determined by the firm.
The reporting requirement is designed to provide a sound basis for evaluating the results achieved by this rule, reveal the strengths and weaknesses of the pro bono plan, and to remind lawyers of their professional responsibility under this rule. The *510 fourth alternative of the reporting requirements allows members to indicate that they have fulfilled their service in some manner not specifically envisioned by the plan.
The 20-hour standard for the provision of pro bono legal service to the poor is a minimum. Additional hours of service are to be encouraged. Many lawyers will, as they have before the adoption of this rule, contribute many more hours than the minimum. To ensure that a lawyer receives credit for the time required to handle a particularly involved matter, this rule provides that the lawyer may carry forward, over the next 2 successive years, any time expended in excess of 20 hours in any 1 year.

RULE 4-6.2 ACCEPTING APPOINTMENTS
A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as when:
(a) representing the client is likely to result in violation of the Rules of Professional Conduct or of the law;
(b) representing the client is likely to result in an unreasonable financial burden on the lawyer; or
(c) the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client.

Comment
A lawyer ordinarily is not obliged to accept a client whose character or cause the lawyer regards as repugnant. The lawyer's freedom to select clients is, however, qualified. All lawyers have a responsibility to assist in providing pro bono publico service as provided in these rules. See rule 4-6.1. An individual lawyer fulfills this responsibility by accepting a fair share of unpopular matters or indigent or unpopular clients. In the course of fulfilling a lawyer's obligation to provide legal services to the poor, a lawyer should not avoid or decline representation of a client simply because a client is unpopular or involved in unpopular matters. Although these rules do not contemplate court appointment as a primary means of achieving pro bono service, Aa lawyer may also be subject to appointment by a court to serve unpopular clients or persons unable to afford legal services.
Appointed counsel
For good cause a lawyer may seek to decline an appointment to represent a person who cannot afford to retain counsel or whose cause is unpopular. Good cause exists if the lawyer could not handle the matter competently, see rule 4-1.1, or if undertaking the representation would result in an improper conflict of interest, for example, when the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client. A lawyer may also seek to decline an appointment if acceptance would be unreasonably burdensome, for example, when it would impose a financial sacrifice so great as to be unjust.
An appointed lawyer has the same obligations to the client as retained counsel, including the obligations of loyalty and confidentiality, and is subject to the same limitations on the client-lawyer relationship, such as the obligation to refrain from assisting the client in violation of the rules.

RULE 4-6.3 MEMBERSHIP IN LEGAL SERVICES ORGANIZATION
[No change.]

RULE 4-6.4 LAW REFORM ACTIVITIES AFFECTING CLIENT INTERESTS
[No change.]
[New rule 4-6.5 is added.]

RULE 4-6.5 VOLUNTARY PRO BONO PLAN
(a) Purpose. The purpose of the voluntary pro bono attorney plan is to increase the availability of legal service to the poor. The following operating plan has as its goal the improvement of the availability of legal services to the poor and the expansion of present pro bono legal service programs. The following operating plan shall be implemented to accomplish this purpose and goal.
(b) Standing Committee on Pro Bono Legal Service. The president-elect of The Florida *511 Bar shall appoint a standing committee on pro bono legal service to the poor.
(1) The standing committee shall be composed of:
a. 5 members of the board of governors of The Florida Bar, 1 of whom shall be the chair or a member of the access to the legal system committee of the board of governors;
b. 5 past or current directors of The Florida Bar Foundation;
c. 1 trial judge and 1 appellate judge;
d. 2 representatives of civil legal assistance providers;
e. 2 representatives from local and statewide voluntary bar associations;
f. 2 public members, 1 of whom shall be a representative of the poor;
g. the president or designee of the board of directors of Florida Legal Services, Inc.; and
h. 1 representative of the out-of-state practitioners' division of The Florida Bar.
(2) Responsibilities of the Standing Committee. The standing committee shall:
a. receive reports from circuit committees submitted on standardized forms developed by the standing committee;
b. review and evaluate circuit court pro bono plans;
c. beginning in the first year in which individual attorney pro bono reports are due, submit an annual report as to the activities and results of the pro bono plan to the board of governors of The Florida Bar, The Florida Bar Foundation, and to the Supreme Court of Florida;
d. present to the board of governors of The Florida Bar and to the Supreme Court of Florida any suggested changes or modifications to the pro bono rules.
(c) Circuit Pro Bono Committees. There shall be 1 circuit pro bono committee in each of the judicial circuits of Florida. In each judicial circuit the chief judge of the circuit, or the chief judge's designee, shall appoint and convene the initial circuit pro bono committee and the committee shall appoint its chair.
(1) Composition of Circuit Court Pro Bono Committee. Each circuit pro bono committee shall be composed of:
a. the chief judge of the circuit or the chief judge's designee;
b. to the extent feasible, 1 or more representatives from each voluntary bar association, including each federal bar association, recognized by The Florida Bar and 1 representative from each pro bono and legal assistance provider in the circuit, which representatives shall be nominated by the association or provider; and
c. at least 1 public member and at least 1 client-eligible member, which members shall be nominated by the other members of the circuit pro bono committee.
Governance and terms of service shall be determined by each circuit pro bono committee. Replacement and succession members shall be appointed by the chief judge of the circuit or the chief judge's designee, upon nomination by the association, the provider organization or the circuit pro bono committee, as the case may be, as deemed appropriate or necessary to ensure an active circuit pro bono committee in each circuit.
(2) Responsibilities of Circuit Pro Bono Committee. The circuit pro bono committee shall:
a. prepare in written form a circuit pro bono plan after evaluating the needs of the circuit and making a determination of present available pro bono services;
b. implement the plan and monitor its results;
c. submit an annual report to The Florida Bar standing committee;
d. to the extent possible, current legal assistance and pro bono programs in each circuit shall be utilized to implement and operate circuit pro bono plans and provide the necessary coordination and administrative support for the circuit pro bono committee;
e. to encourage more lawyers to participate in pro bono activities, each circuit pro *512 bono plan should provide various support and educational services for participating pro bono attorneys, which, to the extent possible, should include:
1. providing intake, screening, and referral of prospective clients;
2. matching cases with individual attorney expertise, including the establishment of specialized panels;
3. providing resources for litigation and out-of-pocket expenses for pro bono cases;
4. providing legal education and training for pro bono attorneys in specialized areas of law useful in providing pro bono legal service;
5. providing the availability of consultation with attorneys who have expertise in areas of law with respect to which a volunteer lawyer is providing pro bono legal service;
6. providing malpractice insurance for volunteer pro bono lawyers with respect to their pro bono legal service;
7. establishing procedures to ensure adequate monitoring and follow-up for assigned cases and to measure client satisfaction; and
8. recognition of pro bono legal service by lawyers.
(d) The following are suggested pro bono service opportunities that should be included in each circuit plan:
1. representation of clients through case referral;
2. interviewing of prospective clients;
3. participation in pro se clinics and other clinics in which lawyers provide advice and counsel;
4. acting as co-counsel on cases or matters with legal assistance providers and other pro bono lawyers;
5. providing consultation services to legal assistance providers for case reviews and evaluations;
6. participation in policy advocacy;
7. providing training to the staff of legal assistance providers and other volunteer pro bono attorneys;
8. making presentations to groups of poor persons regarding their rights and obligations under the law;
9. providing legal research;
10. providing guardian ad litem services;
11. providing assistance in the formation and operation of legal entities for groups of poor persons; and
12. serving as a mediator or arbitrator at no fee to the client-eligible party.
This cause is before this Court on rehearing and on our own motion. We deny rehearing but clarify the Public Service Rules of the Rules Regulating the Florida Bar as set forth in the attached appendix. In addition to minor technical changes to the rules, the following changes have been made:
Rule 4-6.1. First sentence amended to read: Each member of The Florida Bar in good standing, as part of that member's professional responsibility, should (1) render pro bono legal services to the poor and or (2) participate, to the extent possible, in other pro bono service activities that directly relate to the legal needs of the poor. Comment to Rule 4-6.1. References to the term "free" in the second paragraph of the comment to Rule 4-6.1 have been deleted. Additionally, the following sentences have been added to the second paragraph of the comment: "`Pro bono legal service' means legal service rendered without charge or expectation of a fee for the lawyer at the time the service commences. Legal services written off as bad debts do not qualify as pro bono service. Most pro bono service should involve civil proceedings given that government must provide indigent representation in most criminal matters." Further, a new sentence has been added to the fourth paragraph that states: "The fourth alternative of the reporting requirements allows members to indicate that they have fulfilled their service in some manner not specifically envisioned by the plan." Finally, the last sentence in the comment has been changed to read: "To ensure that a lawyer *513 receives credit for the time required to handle a particularly involved matter, this rule provides that the lawyer may carry forward, over the next 2 successive years, any time expended in excess of 20 hours in any 1 year."
NOTES
[1] See In re Amendments to Rules Regulating the Fla. Bar, 598 So.2d 41 (Fla. 1992); In re Amendments to Rules Regulating the Fla. Bar, 573 So.2d 800 (Fla. 1990).
[2] See, e.g., The Florida Bar, Report of The Florida Bar/Florida Bar Foundation Joint Commission on the Delivery of Legal Services to the Indigent in Florida (Feb. 1991) (available through The Florida Bar); The Florida Bar, Recommendations of the Special Commission on Access to the Legal System (May 16, 1985) (available through The Florida Bar); Center for Governmental Responsibility, Holland Law Center, University of Florida, The Legal Needs of the Poor and Underrepresented Citizens of Florida: An Overview (Jon Mills ed. 1980); L. Harold Levinson & Hope Strong III, Methods of Increasing the Supply of Legal Services to the Indigent in Florida (Feb. 7, 1972) (available through The Florida Bar).
[3] We note that there are activities that judges can do to advance the principles of pro bono service. For example, the Eleventh Judicial Circuit in Dade County, in a cooperative effort with the Dade County Bar Association, created a comprehensive pro bono program called "Put Something Back." More than forty judges participate in the program. They train attorneys, staff clinics, and prepare forms and handbooks. Additionally, such activities as teaching seminars for legal aid lawyers or serving on legal aid boards could count toward pro bono service for judges.
[4] Broward Lawyers Care is a pro bono program that is a joint effort of the Broward County Bar Association and the Legal Aid Service of Broward County.